# GALVESTON, HARRISBURG AND SAN ANTONIO RAILWAY COMPANY *v.* WALLACE.

## SAME *v.* CROW.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE FOURTH
SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

Nos. 108, 109.  Submitted December 15, 1911.—Decided February 19, 1912.

Damages caused by failure to deliver goods is not traceable to a viola-
tion of the Interstate Commerce Law, and is not within the pro-
visions of §§ 8 and 9 of the act; the jurisdiction of the commission
and the United States courts is not exclusive. *Texas & Pacific Rail-
way* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, distinguished.

While statutes have no extra-territorial operation and courts of one
government cannot enforce the penal laws of another, state courts
have jurisdiction of civil and transitory actions created by a foreign
statute, provided it is not of a character opposed to the public policy
of the State in which it is brought.

Jurisdiction is not defeated by implication; and there is no presump-
tion that Congress intends to prevent state courts from exercising
jurisdiction already possessed by them, and under which they have
power to hear and determine causes of action created by Federal
statute. *Robb* v. *Connolly*, 111 U. S. 637.

When a Federal statute creating an action, such as the Carmack
amendment, is silent on the subject of jurisdiction, the presump-
tion is that the action may be asserted in a state, as well as in a
Federal, court.

The Carmack amendment to the Hepburn act of June 29, 1906, 34
Stat. 584, 595, c. 3591, is not unconstitutional. *Atlantic Coast Line*
v. *Riverside Mills*, 219 U. S. 186.

*Quære*, and not determinable in this action, as the carrier failed to
plead or prove the cause of non-delivery, whether the Carmack
amendment makes the initial carrier an insurer, or deprives it of
the right to contract with the shipper against liability for damages
not caused by its own or the connecting carrier's negligence.

Under the Carmack amendment, wherever the carrier voluntarily
accepts goods for shipment to a point on another line in another

State, it is conclusively treated as having made a through contract, *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186; it thereby elects to treat connecting carriers as its agents and the presumptions are that if goods are lost the loss results from the negligence of itself or of its agents.

Under the Carmack amendment, when a carrier accepts goods for shipment to a point on another line in another State, the burden of proof falls on it as the initial carrier to prove that the loss has not resulted from some cause for which it is in law or by contract responsible.

THE facts, which involve the liability of an initial common carrier for non-delivery of goods by the connecting carrier, are stated in the opinion.

*Mr. Maxwell Evarts* and *Mr. James L. Bishop* for plaintiffs in error:

Plaintiff in error does not attempt to reargue *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186, but contends that the Carmack amendment did not impose upon the initial carrier the obligation of an insurer of the safe delivery of the goods at destination.

There was no evidence that the loss was caused by the initial carrier or by any connecting carrier unless the mere failure to deliver was evidence that the loss was not caused by a third person. This cannot be so, unless the carrier contracted for, or the statute imposed, the obligation of an insurer of safe delivery at destination. *Matter of Release Rates*, 13 I. C. C. R., 550; *Bernard* v. *Adams Express Co.*, 205 Massachusetts, 254.

The statute does not include the liability of an insurer against loss, for which the common carrier is not culpably chargeable. It does not restrict the right of an express company to stipulate as to the value of goods and to limit its liability to the value agreed upon. *Travis* v. *Wells, Fargo & Company*, 74 Atl. Rep. 444; *Wright* v. *Adams Express Company*, 43 Pa. Supr. Ct. 40; and see *Latta* v. *Chic., St. P., M. & O. R.,* 172 Fed. Rep. 850.

By accepting the goods for transportation the defendant did not assume a contractual obligation to deliver the goods at final destination. *Muscamp* v. *Lancaster & P. R. R. Co.*, 8 Mees. & W. 421; Hutchinson on Carriers, §§ 228 *et seq.* The statute does not attempt to make a receipt or bill of lading conclusive evidence of a contract for through carriage. If it had attempted to do so, it may well be doubted whether the attempt would have been legal. *Chicago R. Co.* v. *Minnesota*, 134 U. S. 418; *Howard* v. *Moot*, 64 N. Y. 262–268; *Meyer* v. *Berlandi*, 39 Minnesota, 438; *Railway Co.* v. *Simonson*, 64 Kansas, 802; Wigmore on Evidence, § 1354.

The common law imposes upon the carrier the obligation to receive and carry the goods tendered to it for transportation over its own line even though marked for a destination beyond its own line. *United States* v. *Geddes*, 131 Fed. Rep. 452, 458.

This is the law in Texas and in other States. *Inman* v. *St. Louis S. W. R. R.*, 14 Tex. Civ. App. 39; *Seasongood* v. *Tennessee O. R. Company*, 21 Ky. L. R. 1142; and the performance of this duty may be compelled by mandamus. *So. Ex. Co.* v. *R. M. Rose Co.*, 124 Georgia, 581.

The common law also imposes upon the carrier the duty of delivery of the goods to the succeeding carrier, where they are received for transportation to a point beyond the initial carrier's line. *Michigan Cent. R. R. Co.* v. *Mineral Springs Mfg. Co.*, 16 Wall. 318; *Tift* v. *Southern Railroad*, 123 Fed. Rep. 789; *Rawson* v. *Holland*, 59 N. Y. 611. This is an obligation from which the carrier cannot release himself. Public policy, however, requires that the rule should be enforced.

These obligations of the common law are made statutory as to interstate commerce by the provisions of the Interstate Commerce Law.

Since the initial carrier was under the legal obligation to receive and carry the goods over its own line, although

marked to a destination in another State, and was likewise under the legal obligation to deliver the goods to the succeeding carrier, no inference can be drawn from the mere receipt of the goods that the railroad company intended to contract to carry the goods to destination, because of the existence upon the statute book of the Carmack amendment. Its act was not voluntary, but compulsory, and therefore there can be found no element of intention of adopting the statute as a condition of entering into the employment.

The railroad company when this bill of lading was issued claimed the statute was unconstitutional, and a statute claimed to be unconstitutional will not be regarded as inserted in the contract by implication. *Cleveland* v. *Clements Bros. Cons. Co.*, 65 N. E. Rep. 885; *S. C.*, 59 L. R. A. 775; *Palmer* v. *Tingley*, 45 N. E. Rep. 313.

The mere failure of the last connecting carrier to deliver the goods at destination was not evidence of a loss of the goods caused by the initial carrier or a connecting carrier.

To recover upon a statutory liability, the plaintiff must allege and prove each of the facts essential to establish such statutory liability. 31 Cyc.; *Richs* v. *Reed*, 19 California, 551; *Blake* v. *Russell*, 77 Maine, 492; *Hale* v. *Miss. P. R. Co.*, 36 Nebraska, 266; *Hall* v. *Palmer*, 54 Michigan, 217.

In the *Riverside Mills Case*, it was conceded that the loss of the goods was due to the negligence of the connecting carrier.

The statute as construed and enforced by the Texas courts is unconstitutional because it deprives the defendant of its property without due process of law. It has been held liable not by reason of any fault of its own or the connecting carrier, but as an insurer of the safe delivery of the goods at a destination beyond its line to which it had not contracted for transportation.

The act is unconstitutional because it requires the initial carrier to answer for a wrong done by a connecting carrier for whose act it is in no way responsible, since it is quite impossible that the statute could constitutionally make the connecting carrier the agent of the initial carrier against the will of the latter, and then on the theory of such agency hold it liable for wrongful act of the connecting carrier.

Congress cannot, without violating the Fifth Amendment, nor can any state legislature, without violating the Fourteenth Amendment, take the property of one person and give it to another, nor can either legislative body effect this by establishing forms of law with or without notice. *Wilkinson* v. *Leland,* 2 Pet. 627, 658; *Taylor* v. *Porter,* 4 Hill, 140; *Westervelt* v. *Gregg,* 2 N. Y. 202, 212; *Holden* v. *Hardy,* 169 U. S. 369, 390; *Louis. & Nash. R. R. Co.* v. *Stock Yards Co.,* 212 U. S. 132; *Smythe* v. *Ames,* 169 U. S. 466; *Howard* v. *Ill. Cent. R. R. Co.,* 207 U. S. 463.

Nor can this legislation be sustained under the commerce clause. The Constitution was intended to establish a harmonious system by which no power was lodged in any department of the Government which could be exercised to the subversion of civil liberty.

That power, like all others vested in Congress, is subject to the limitations prescribed in the Constitution. *Gibbons* v. *Ogden,* 9 Wheat. 196; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 310; *Employers' Liability Cases,* 207 U. S. 463, 502; *Hoxie* v. *N. Y. & N. H. R. Co.,* 82 Connecticut, 356.

The right to engage in commerce between the States is not a right created by or under the Constitution of the United States. It existed long before the Constitution was adopted. It was expressly guaranteed to the free inhabitants of each State by Art. IV of the Articles of Confederation, and impliedly guaranteed by Art. IV, § 2, of the Constitution of the United States as a privilege

inherent in American citizenship. *Slaughter House Cases,* 16 Wall. 36, 75; *Gibbons* v. *Ogden,* 9 Wheat. 1, 211; *Crandall* v. *Nevada,* 6 Wall. 35; *Lottery Cases,* 188 U. S. 321, 362; *Employers' Liability Cases,* 207 U. S. 463, 502.

This case is governed by the same rules as apply to cases in which it has been held that state legislation imposing rates of tariff confiscatory in character, violate the constitutional requirement of due process of law as invading property rights. *Smythe* v. *Ames,* 169 U. S. 466; *Lake Shore & M. S. R. R. Co.* v. *Smith,* 173 U. S. 685; *Cherokee Nation* v. *Southern Kansas Railway Co.,* 143 U. S. 641; *Lake Shore & M. S. Ry. Co.* v. *Ohio,* 173 U. S. 285, 301.

A corporation is a person within the protection of the Fourteenth Amendment. *Minneapolis & St. Louis R. R. Co.* v. *Beckwith,* 129 U. S. 26. Although it is under governmental control, that control must be exercised with due regard to constitutional guarantees for the protection of its property. *Chicago Street Railway* v. *Chicago,* 142 Fed. Rep. 845. It cannot be said that the connecting carrier is in some sense associated with the said initial carrier because a through rate of freight was stipulated, and therefore the initial carrier may be made liable for a loss occurring on the line of a connecting carrier. A through rate does not necessarily indicate an agreement for a through carriage, and if it did, then the liability of the initial carrier would rest upon his obligation by contract as a carrier over the entire route to destination. It would rest upon the initial carrier's contract and not upon the statute. *Penn. Ref. Co.* v. *West N. Y. & P. R. R. Co.,* 208 U. S. 208, 222; *Chicago & N. W. Ry. Co.* v. *Osborn,* 52 Fed. Rep. 912.

The joint liability must result from some contract or agreement which would constitute them joint contractors or partners. *Wilson* v. *L. & N. R. Co.,* 103 N. Y. App. Div. 203.

The remedy attempted to be given by the statute to

the initial carrier against a connecting carrier in case of payment of loss is unconstitutional and therefore the statute is wholly void. *Warren* v. *Charleston,* 2 Gray, 84; *Pollock* v. *Farmers' Loan & Trust Co.,* 158 U. S. 634, 636; *Howard* v. *The Illinois Cent. R. R.,* 207 U. S. 461; *The Trade-Mark Cases,* 100 U. S. 82; and see *International T. B. Co.* v. *Pigg,* 217 U. S. 113; *Smeltzer* v. *St. Louis & S. F. R. Co.,* 158 Fed. Rep. 660.

If the railroad company came under any obligation to the shipper for the through carriage of the goods, then the court erred in excluding the defense of the release by the shipper of the railroad company from liability for loss or injury to the goods not occasioned by its own negligence or that of a connecting carrier.

The Interstate Commerce Commission has expressed the opinion that under this statute a stipulation for exemption from liability for losses due to causes beyond the carrier's control is grounded upon a construction of the words of the statute "caused by it or the connecting carrier."

This construction of the statute was also adopted in *Greenwald* v. *Weir,* 130 N. Y. App. Div. 696.

If this be the true construction of the statute, the court erred in excluding this defense, and this presents a Federal question because the defense was ruled out as being in contravention of the act of Congress of June, 1906.

The court below erred in refusing to give effect to the stipulation of the contract making the measure of damages the value and price of the articles at the place and time of shipment.

The stipulation that in the event of loss the amount of damages recoverable shall be the market value of the goods at the place and time of shipment, if freely and fairly entered into is valid, although the courts in Texas hold that such a provision is invalid so far as it affects the company's liability for a loss caused by negligence. *South-*

*ern Pacific Ry. Co.* v. *Maddox*, 75 Texas, 300. This question, being one of general commercial law and not governed by statute, this court will be governed by its own decisions and the reasons which control its action. *Michigan Cent. Ry.* v. *Myrick*, 107 U. S. 102; *N. Y. C. R. R. Co.* v. *Lockwood*, 17 Wall. 357; *Hart* v. *Penna. R. R. Co.*, 112 U. S. 331; *Matter of Released Rates*, 13 I. C. C. 559. It was not the purpose of the Carmack amendment to change this rule of law.

The right of action was created by the statute and jurisdiction to entertain it was conferred exclusively upon the Federal courts.

The state courts have not concurrent jurisdiction with Federal courts of suits brought on a statutory liability under the Interstate Commerce Law. The jurisdiction is exclusively in the Federal court. *Sheldon* v. *Wabash R. R. Co.*, 105 Fed. Rep. 785; *Van Patten* v. *Chicago, M. & St. Paul R. Co.*, 74 Fed. Rep. 901; *Northern Pacific Ry. Co.* v. *Pacific Coast Lumber Mfrs. Assn.*, C. C. A., 165 Fed. Rep. 1, 9.

Since the right of recovery rests upon a Federal statute, a Federal question is necessarily involved. *Schlemmer* v. *Buffalo R. & P. Ry. Co.*, 205 U. S. 1; *Hoxie* v. *N. Y. & N. H. R. R. Co.*, 82 Connecticut, 356.

There was no appearance or brief filed for defendants in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

In both these cases the plaintiff in error was held liable as "initial carrier" for failure to deliver mohair shipped from points in Texas to the consignee in Lowell. The company denied liability on the ground that under the contract expressed in the bills of lading its obligation and liability ceased when it duly and safely delivered the goods

to the next carrier. It excepts to various rulings of the trial court by which it was prevented from proving that it had fully complied with its contract; had duly delivered the mohair, at Galveston, to the first connecting carrier, which delivered it, at New York, to the next carrier, which, in turn, delivered it to the Boston & Maine Railroad. Neither the pleadings nor proof showed what this company did with the mohair nor the cause of its nondelivery, if indeed it was not delivered. For there was some evidence tending to show that this mohair might have been among other sacks, the marks of which had been destroyed, and were still held by the consignee awaiting identification. This contention, however, was found against the carrier, and it was held liable to the plaintiffs. 117 S. W. Rep. 169, 170.

The question as to whether the plaintiff was entitled to recover the value of the goods at Lowell or, as provided in the bill of lading, at the point of shipment, is suggested in one of the briefs. No such issue was made in the lower court, nor is it referred to in any of the many assignments of error involving the construction and constitutionality of the Carmack amendment to the Hepburn Act of 1906, providing that where goods are received for shipment in interstate commerce the initial carrier shall be liable for damages caused by itself or connecting carriers, and making void any contract of exemption against such liability. (34 Stat. 584.)

1. The jurisdiction of the state court was attacked, first, on the ground that § 9 of the original act of 1887 provided that persons damaged by a *violation* of the statute "might make complaint before the commission . . . or in any District or Circuit Court of the United States." 24 Stat. 379.

It was contended that *Texas & Pacific Ry.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, ruled that this jurisdiction was exclusive, and from that it was argued that no suit

could be maintained in a state court on any cause of action created either by the original act of 1887 or by the amendment of 1906. But damage caused by failure to deliver goods is in no way traceable to a violation of the statute, and is not, therefore, within the provision of §§ 8 and 9 of the act to regulate commerce. *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186, 208.

The real question, therefore, presented by this assignment of error, is whether a state court may enforce a right of action arising under an act of Congress.

Statutes have no extra-territorial operation, and the courts of one government cannot enforce the penal laws of another. At one time there was some question both as to the duty and power to try civil cases arising solely under the statutes of another State. But it is now recognized that the jurisdiction of state courts extends to the hearing and determination of any civil and transitory cause of action created by a foreign statute, provided it is not of a character opposed to the public policy of the State in which the suit is brought. Where the statute creating the right provides an exclusive remedy, to be enforced in a particular way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right. But jurisdiction is not defeated by implication. And, considering the relation between the Federal and the state Government, there is no presumption that Congress intended to prevent state courts from exercising the general jurisdiction already possessed by them, and under which they had the power to hear and determine causes of action created by Federal statute. *Robb* v. *Connolly*, 111 U. S. 624, 637.

On the contrary, the absence of such provision would be construed as recognizing that where the cause of action was not penal, but civil and transitory, it was to be subject to the principles governing that class of cases, and might be asserted in a state court as well as in those of

the United States. This presumption would be strengthened as to a statute like this passed, not only for the purpose of giving a right, but of affording a convenient remedy.

2. The question as to the constitutionality of the Carmack amendment, though ably and elaborately argued, is out of the case, having been decided adversely to the contention of the plaintiff in *Atlantic Coast Line R. R.* v. *Riverside Mills,* 219 U. S. 186, after the present suit was instituted.

The company, however, seeks to distinguish this from that on the ground that in the *Riverside Case* it was admitted that the damage to the freight was caused by the negligence of the connecting carrier. And, as the statute applies to cases where the damage is *caused* by the initial or connecting carrier, and as the cause of the loss of the goods does not appear here, it is argued that liability is to be governed by the contract, which provides that the initial carrier should not be responsible beyond its own line. Plaintiff in error insists that the Carmack amendment did not make it an insurer. Under the construction given that statute in *Matter of Released Rates,* 13 I. C. C. Rep. 550; *Patterson* v. *Adams Express Co.,* 205 Massachusetts, 254; *Travis* v. *Wells-Fargo Express Co.,* 74 Atl. Rep. 444, it claims that the initial carrier is not deprived of its right to contract with the shipper against liability for damages not caused by either carrier's negligence. But the failure to plead and to prove the cause of the nondelivery of the goods at destination precludes any determination of such questions.

Under the Carmack amendment, as already construed in the *Riverside Mills Case,* wherever the carrier voluntarily accepts goods for shipment to a point on another line in another State, it is conclusively treated as having made a through contract. It thereby elected to treat the connecting carriers as its agents, for all purposes of transportation

and delivery. This case, then, must be treated as though the point of destination was on its own line, and is to be governed by the same rules of pleading, practice and presumption as would have applied if the shipment had been between stations in different States, but both on the company's railroad. Thus considered, when the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such proof. If the failure to deliver was due to the act of God, the public enemy or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception. In the absence of such proof, the plaintiffs were entitled to recover, and the judgment is

*Affirmed.*