STORM LAKE TUB & TANK FACTORY v. MINNEAPOLIS & ST. L. R. CO.

(District Court, N. D. Iowa, C. D.  December 24, 1913.)

No. 29.

1. REMOVAL OF CAUSES (§ 25*)—FEDERAL QUESTION—HOW SHOWN.

The provisions of section 28 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1094 [U. S. Comp. St. Supp. 1911, p. 140]) for the removal of suits arising under the Constitution or laws of the United States authorizes such removal only when such facts appear from plaintiff's own statement of his claim, and, if they do not so appear, their omission cannot be supplied by the petition for removal or by any subsequent pleading.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 58, 59; Dec. Dig. § 25.*]

2. REMOVAL OF CAUSES (§ 19*)—AMOUNT IN CONTROVERSY—SUITS ARISING UNDER LAW REGULATING COMMERCE—CARMACK AMENDMENT.

An action against a railroad company to recover for loss of or damage to an interstate shipment of goods through the negligence of defendant is one to enforce the common-law liability of the defendant, and is only removable from a state court on the ground of diversity of citizenship and when the amount in controversy exceeds the sum or value of $3,000. Such action is not a suit arising under "any law regulating commerce," within the meaning of Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1092 [U. S. Comp. St. Supp. 1911, p. 136]) § 24, par. 8, of which the district court by paragraph 1 is given jurisdiction, regardless of the citizenship of the parties or the amount involved, as based on Interstate Commerce Act Feb. 4, 1887, c. 104, § 9, 24 Stat. 382 (U. S. Comp. St. 1901, p. 3159), which is limited to actions for damages because of the violation of some provision of the act, nor as based on the so-called Carmack amendment to section 20 of the act, embodied in Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1911, p. 1307), requiring the issuance of bills of lading for interstate shipments, the purpose of which is to make the carrier issuing such bill liable thereon by statute for any loss or damage occurring on connecting lines.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53; Dec. Dig. § 19.*]

At Law. Action by the Storm Lake Tub & Tank Factory against the Minneapolis & St. Louis Railroad Company. On motion to remand to state court. Motion sustained.

Bailie & Edson, of Storm Lake, Iowa, for plaintiff.

Price & Joyce, of Ft. Dodge, Iowa, for defendant.

REED, District Judge. The plaintiff filed its petition against the defendant railroad company in the district court of Iowa, in and for Buena Vista county, July 28, 1913, in two counts, which are in effect the same, alleging in substance: That plaintiff is an Iowa corporation engaged in manufacturing butter tubs and tanks at Storm Lake, Iowa; that defendant is a railroad corporation engaged as a common carrier

of persons and property in the states of Iowa and Minnesota; that about March 1, 1913, the plaintiff delivered to the defendant at Storm Lake, and loaded into one of its cars at that place, 2,000 butter tubs, consigned to R. E. Cobb, of St. Paul, Minn., to be carried by the defendant to St. Paul and there delivered to said consignee; that defendant undertook to so carry said tubs to St. Paul, but in doing so they were damaged, by its neglect in transporting them, to such an extent that they were of no value, and plaintiff has suffered damages because thereof in the sum of $400. There is a further claim by plaintiff in each count for $7.20 as an overcharge on freight by the defendant. The plaintiff asks judgment against the defendant-for $407.20, with interest and costs.

In due time the defendant filed in the state court its petition and bond to remove the cause to this court, in which petition it is alleged:

"That this suit is one of a civil nature at common law of which the District Courts of the United States have sole and exclusive jurisdiction; that it is an action brought by the plaintiff, which is a corporation organized under the laws of the state of Iowa, with its principal place of business at Storm Lake, in said state, against the defendant, which is a common carrier, incorporated under the laws of the state of Minnesota, from Storm Lake, in the state of Iowa, to the city of St. Paul, in the state of Minnesota, and that the said shipment of goods, on which it bases its claim for damages, was an interstate shipment; that plaintiff's claim is based upon the following statement of facts, to wit: On March 1, 1913, it loaded and consigned to R. E. Cobb, at St. Paul, 2,000 butter tubs of the value of 20 cents each. That, owing to the negligence of the said defendant, said tubs were totally destroyed, wherefore plaintiff sustained damages in the sum of $400. It is further claimed that the defendant charged the plaintiff excess freight in the sum of $7.20, which amount is sought to be recovered. That said suit involves a federal question, viz., an application and construction of section 20 of the federal Interstate Commerce Act, as amended by the act of June 29, 1906, which act, as construed by the court, grants to the United States District Courts exclusive jurisdiction of the character above described"

—and defendant asks that the cause be removed to this court.

The state court ordered the removal over the objections of the plaintiff, and the latter now moves to remand the cause to the state court upon the grounds substantially: (1) That the amount involved is less than $3,000, exclusive of interest and costs. (2) That the cause of action alleged in its petition does not arise under or by virtue of any law regulating commerce; nor is it founded upon or created by any federal law. (3) That plaintiff's cause of action so alleged is based upon the alleged negligence of defendant, whereby plaintiff has been damaged in the amount for which it claims judgment, and does not arise under the Constitution, laws, or treaties of the United States.

The contention of the defendant is that the cause of action alleged by the plaintiff in its petition is one arising under the laws of the United States, and particularly under the "act of Congress to regulate commerce" (chapter 104; § 20, Act Feb. 4, 1887, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169], as amended by section 7 of Act of June 29, 1906, c. 3591, 34 Stat. 593 [U. S. Comp. St. Supp. 1911, p. 1307]), of which it is claimed the federal courts have exclusive jurisdiction, and may be removed from a state court, when brought therein, to the

proper District Court of the United States, regardless of the amount involved or the citizenship of the parties. Sections 24 and 28 of the Judicial Code are relied upon by the defendant as sustaining its' contention. Those sections, so far as material to the questions now involved, read in this way:

"Sec. 24. The District Courts (of the United States) shall have original jurisdiction as follows:

"First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue, or between citizens of the same state claiming lands under grants from different states; or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value ,of three thousand dollars, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different states, or (c) is between citizens of a state and foreign states, citizens, or subjects. [Then follows the provision as to suits upon foreign bills of exchange, and upon promissory notes or other choses in action in favor of assignees, etc.] * * * Provided, however, that the foregoing provision as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section."

The succeeding eighth paragraph of this section is:

"Eighth. Of all suits and proceedings arising under any law regulating commerce, except those suits and proceedings exclusive jurisdiction of which has been conferred upon the Commerce Court."

"Sec. 28. (1) Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the District Courts of the United States are given original jurisdiction by this title, which may now be pending or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the District Court of the United States for the proper district.

"(2) Any other suit of a civil nature, at law or in equity, of which the District Courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought, in any state court, may be removed into the District Court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that state. * * *"

(These paragraphs are numbered as (1) and (2) for the convenience in hereinafter referring to them.)

The state courts of competent jurisdiction and the District Courts of the United States have concurrent jurisdiction of the suits mentioned in these sections, except where the jurisdiction of the latter is exclusive under some provisions of the Constitution of the United States, or is made so by section 256 of the Judicial Code or some other act of Congress. Claflin v. Houseman, Assignee, 93 U. S. 130, 136, 137, 23 L. Ed. 833; Mondou v. New York, etc., R. R. Co., 223 U. S. 1, 55, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 490, 32 Sup. Ct. 205, 56 L. Ed. 516.

[1] The removal of this cause from the state court cannot be sustained under paragraph (1) of section 28, for that paragraph authorizes the removal of suits arising under the Constitution, laws, or treaties of the United States only when such facts appear from the plaintiff's own statement of his claim, and, if they do not so appear, their

209 F.—57

omission cannot be supplied by the petition for removal, or in any sub-sequent pleading. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, 39 L. Ed. 85; Oregon Short Line, etc., Ry. Co. v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869, 40 L. Ed. 1048; Florida Central, etc., R. R. v. Bell, 176 U. S. 321, 20 Sup. Ct. 399, 44 L. Ed. 486; and the recent case of In re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873. This question, it would seem, is not open to debate in the lower federal courts.

[2] There is nothing in the petition of the plaintiff in this case that shows even remotely that the cause of action therein alleged is one "arising under the Constitution or any law of the United States," un-less it be the allegation "that defendant is a railroad corporation en-gaged as a common carrier of persons and property in the states of Iowa and Minnesota." It is entirely clear that this allegation does not show any cause of action arising under clause (a) of the first paragraph of section 24 of the Judicial Code, unless it be that part of the petition which claims $7.20 as an overcharge upon some shipment of freight. It is not alleged, however, that this overcharge was made upon the shipment in question, nor upon any other interstate shipment of freight; nor is it claimed in argument by counsel for either party that this claim has any bearing upon the question of the right to remove this suit; it might well, therefore, be dismissed from further consideration; but it will be referred to later. The removal of the cause from the state court cannot therefore be sustained under paragraph (1) of sec-tion 28 of the Judicial Code. May it be removed under paragraph (2) of that section? That paragraph authorizes the removal from a state court by the *nonresident* defendant of "any other suit of a civil nature at law or in equity (pending therein) of which the District Courts of the United States are given jurisdiction by this title."

The proviso in the first paragraph of section 24 saves from the juris-dictional amount fixed by that paragraph the cases mentioned in the "succeeding paragraphs of that section." The "cases mentioned" in the succeeding eighth paragraph are:

"All suits and proceedings arising under any law regulating commerce, ex-cept those suits and proceedings exclusive jurisdiction of which has been con-ferred upon the Commerce Court."

The suits and proceedings of which the Commerce Court is so given exclusive jurisdiction are those mentioned in section 1 of the act of Congress approved June 18, 1910 (36 Stat. 539, c. 309 [U. S. Comp. St. Supp. 1911, p. 217]); section 207 of the Judicial Code. It is the contention of the defendant that the cause of action for the loss of the freight, alleged in the plaintiff's petition, falls within the provision of the "eighth paragraph" of section 24, and may therefore be removed from the state court to this court, regardless of the amount involved or the citizenship of the parties. It is obvious that the "suits and pro-ceedings" mentioned in the eighth paragraph of section 24 are suits and proceedings other than those arising under clause (a) of the first paragraph of that section, viz., under the Constitution, laws, or trea-ties of the United States, for a suit or proceeding arising under "any

law regulating commerce" would of necessity be one arising under "a law of the United States." What, then, are the suits and proceedings that may arise under "any law regulating commerce" of which original jurisdiction is conferred upon the District Courts? Chapter 104 of the act of Congress approved February 4, 1887 (24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), is entitled an "act to regulate commerce," and that act, with its amendments, is commonly known as the "act to regulate commerce." This act in certain of its sections imposes upon the common carriers made subject thereto, the duty to establish schedules of reasonable and just rates for the transportation of persons and property in interstate commerce over their roads and file copies thereof with the Interstate Commerce Commission, and forbids them, under the penalties prescribed, from directly or indirectly, by any device whatever, charging, collecting, or receiving from any person or persons any other or greater or less compensation for any service rendered or to be rendered by them in the transportation of persons or property than that fixed in the schedules so filed, or as they may be changed by the Interstate Commerce Commission, or than it charges, collects, or receives from any other person or persons for a like and contemporaneous service under substantially similar circumstances and conditions, and declares that it shall be unlawful for any such common carrier to so do.

Section 8 of the act provides that in case any common carrier subject to the provisions of the act shall do, permit, or cause to be done any act, matter, or thing in the act forbidden or declared to be unlawful, or shall omit to do any act, matter, or thing required by it to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation, together with a reasonable attorney's fee, to be fixed by the court in every case of recovery, and taxed as part of the costs in the case.

Section 9 of the act provides that any person claiming to be damaged by any common carrier subject to the provisions of the act may either make complaint to the Interstate Commerce Commission, as thereinafter provided, or may bring suit in his own behalf for the recovery of the damages, for which such common carrier may be liable under the act, in any District Court of the United States of competent jurisdiction, or in any state court. Section 16, as amended by the Act of June 18, 1910, c. 309 (36 Stat. 539, 554). But such person shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure therein provided he will adopt.

This act creates a right of action against such carriers that did not previously exist in favor of any person who has suffered damages because of a violation by any such common carrier of its provisions, and authorizes such person to apply to the Interstate Commerce Commission for relief, or to bring suit in a District Court of the United States, or any state court, of competent jurisdiction for the recovery of such damages; but he must elect which of such remedies he shall pursue; and, before bringing an *action at law* to recover such damages, he must

first apply to the Interstate Commerce Commission for such relief as it may afford. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

These are obviously the "suits and proceedings" mentioned in the eighth paragraph of section 24 of the Judicial Code, as arising under "any act to regulate commerce," of which the District Courts of the United States are given original jurisdiction by the first paragraph of that section, regardless of the amount involved or the citizenship of the parties, and which may be removed from a state court, when brought therein, by *the defendant*, to the proper District Court of the United States, under paragraph (1) of section 28 of the Judicial Code.

The "act to regulate commerce" has been much amended by the acts of June 29, 1906 (34 Stat. 584, c. 3591), and of June 18, 1910 (36 Stat. 544, c. 309), and it is claimed that the cause of action alleged in the plaintiff's petition falls within that part of section 7 of the act of 1906 (34 Stat. 595), known as the "Carmack amendment," and is therefore a cause of action arising under the "act to regulate commerce" of which the District Courts of the United States are given jurisdiction by the first paragraph of section 24; and Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, and McGoon v. Northern Pacific Ry. Co. (D. C.) 204 Fed. 998, are relied upon by the defendant as sustaining this contention. The so-called "Carmack amendment" reads in this way:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment or transcript thereof."

This amendment saves to the shipper or holder of the receipt the right of action under existing federal law not inconsistent with its provisions. Adams Express Co. v. Croninger, 226 U. S. 491, 509, 33 Sup. Ct. 148, 57 L. Ed. 314. The questions of the constitutional validity of this amendment, and of its true interpretation, came before the Supreme Court in the case of the Atlantic Coast Line Railroad Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7. That was an action by the Riverside Mills to recover the value of certain goods which it had delivered to the Atlantic Coast Line Railroad at a point on its line in the state of Georgia for transportation to points in other states not on its line, and for which it gave to the mill company a receipt or through bill of lading which contained certain conditions, one of which was:

"No carrier shall be liable for loss or damage not occurring on its portion of the route."

The Atlantic Coast Line delivered the goods in good condition to a connecting carrier to be forwarded to their destination, but they were lost while in the custody of such connecting carrier, and the mill company sued the Atlantic Coast Line Company under the Carmack amendment in the United States Circuit Court for their value. The railroad company in its defenses challenged the constitutional validity of the amendment and denied its liability for a loss not occurring upon its own line. Its defenses were overruled, and judgment rendered against it by the Circuit Court for the value of the goods and an attorney's fee for the plaintiff's counsel, which was fixed by the court and taxed as part of the costs. The railroad company carried the case to the Supreme Court, which sustained the validity of the amendment, and in its opinion referred to its own prior decisions, the English decisions, and the conflicting decisions of many of the American courts upon the question of the liability of the initial carrier, in the absence of legislation, for the loss of goods received by it for carriage to points beyond its own line, and said of the effect of the Carmack amendment:

"The indisputable effect of this amendment is to hold the initial carrier engaged in interstate commerce and receiving property for transportation from a point in one state to a point in another state as having contracted for through carriage to the point of destination, using the lines of connecting carriers as its agents."

The judgment against the Atlantic Coast Line Company for the value of the goods was therefore sustained. But of the judgment for an attorney's fee taxed as part of the costs, Mr. Justice Larton, speaking for the court, said:

"The authority for this is supposed to be found in the eighth section of the act to regulate commerce of February 4, 1887 (24 Stat. 379, 382, c. 104). That section reads as follows: 'That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, which shall be fixed by the court in every case of recovery and taxed and collected as part of the costs of the case.' But that section applies to cases where the cause of action is the doing of something made unlawful by some provision of the act, or the omission to do something required by the act, and there is a recovery 'of damages sustained in consequence of any such violation.' The cause of action in the present case is not for damages resulting from 'any violation of the provisions of this act.' True, the plaintiff in error attempted by contract to stipulate for a limitation of liability to a loss on its own line, and in this action has defensively denied liability for a loss not occurring on its own line. But the cause of action was the loss of the plaintiff's property which had been intrusted to it as a common carrier, and that loss is in no way traceable to the violation of any provision of the act to regulate commerce. Having sustained no damage which was a consequence of the violation of the act (to regulate commerce), the section has no application to this case. The judgment was erroneous to this extent, and the provision for an attorney's fee is stricken out, and the judgment thus modified is affirmed."

The true interpretation or meaning of the Carmack amendment was directly involved in that case, and it is held that suits or actions

to recover, from the primary carrier under that amendment, damages for an injury to or loss of property received by it as a common carrier for transportation as an interstate shipment do not arise under "the act to regulate commerce" but are actions to recover from such carrier upon its common-law liability as a common carrier for damages to or loss of the property occurring upon the line of any connecting carrier to whom it delivers the property as its agent to be carried to or towards its destination.

There is nothing in Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, that in any way modifies this decision. In that case the express company was sued in a state court for the actual value of property it had received for carriage from one state to another under which it limited its liability, in case of the loss of the property, to its value as fixed by its owner, and upon which the cost of carriage was based (to do which has always been regarded as just and reasonable, Kansas City Southern Ry. Co. v. Carl, 227 U. S. 640, 647, 33 Sup. Ct. 391, 57 L. Ed. 683), contrary to a statute of the state of Kentucky which forbade it to make any rule or contract so limiting its liability. The state court denied the right it so claimed, and the case went to the Supreme Court under section 709 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 575). The question of the jurisdiction of the District Courts of the United States of such a suit, either upon original process or by removal from a state court, was in no way involved and is not considered or determined. Some things said in the opinion arguendo might indicate that not only state laws or rules regulating common carriers by railroad in interstate commerce, inconsistent with the Carmack amendment, were superseded by that amendment, but that the liability of common carriers as at common law for the loss of property intrusted to them for carriage was also superseded. Clearly it was not in the mind of the court to hold that the liability of common carriers as at common law for such loss, not traceable to any violation of the act to regulate commerce, was superseded by this amendment.

In this connection it is well to bear in mind the oft-quoted words of Chief Justice Marshall, who in speaking of some dictum of his own in Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60, said:

"It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257.

And see Hans v. Louisiana, 134 U. S. 1, 20, 21, 10 Sup. Ct. 504, 33 L. Ed. 842.

So limited, there is nothing in the decision of Adams Express Co. v. Croninger that bears even remotely upon the question of the jurisdiction of the District Courts of the United States of such an action or suit. That case only decides that state statutes and regulations incon-

sistent with the Carmack amendment are superseded by that amendment, not that the common-law liability of a carrier for the loss of property intrusted to it for carriage upon its own line or that of its agent, not traceable to any violation of the act to regulate commerce, is superseded or done away with by the amendment. And especially was it not in the mind of the court to hold that the District Courts of the United States are given exclusive jurisdiction of such suits, or jurisdiction thereof at all, except when the requisite diversity of citizenship and amount in controversy exist.

But, apart from this, the present suit is one to recover from the defendant railroad company the value of property received by it from the plaintiff at Storm Lake, to be carried as a common carrier to a point upon its line in Minnesota, for damage to the property occurring upon its own line, not traceable to any violation of the act to regulate commerce. The Carmack amendment does not create its liability for such a loss, for such liability arises under the common-law rule which holds a common carrier of property liable for its loss or injury while in its custody as such carrier from all causes not due to an act of God or the public enemy. True the amendment provides that the carrier receiving the property for an interstate carriage shall issue a receipt therefor and shall be liable to the holder of such receipt for any damage to the property caused by it or by any connecting carrier to whom it may be delivered to be carried towards its destination. But the purpose of this amendment, as held in Atlantic Coast Line Co. v. Riverside Mills, 219 U. S. 197, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, in Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 490, 32 Sup. Ct. 205, 56 L. Ed. 516, and in M., K. & T. Co. v. Harriman, 227 U. S. 657, 672, 33 Sup. Ct. 397, 57 L. Ed. 690, is to make the primary carrier liable as at common law for a loss of the property occurring upon the line of its agents, the connecting carrier or carriers, the same as if it had occurred upon its own line.

Since the decision of Judge Amidon in McGoon v. Northern Pacific Ry. Co. (D. C.) 204 Fed. 998, mostly relied upon by the defendant, the dockets of this court in the several divisions of the district are being filled with suits brought in the state courts by shippers against different railroad companies to recover damages in small amounts, for injuries to or loss of property intrusted to them to be carried from one state to another, and removed to this court by the defendants, regardless of the amount involved or the citizenship of the parties, some of which suits come from justices of the peace before whom they were commenced.

The case of Atlantic Coast Line R. R. Co. v. Riverside Mills, above, was decided January 3, 1911, and the Judicial Code was enacted March 3d following. With this in mind, and in view of the fact that the Supreme Court had frequently held that the Judiciary Acts of March 3, 1887, c. 373, 24 Stat. 552, and Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), was intended to contract the jurisdiction of the lower federal courts, and such obviously was the purpose of the Judicial Code as to the jurisdictional amount at least (except in those cases where the Circuit and District Courts formerly exercised jurisdiction of suits involving small amounts), it seems incredible that

Congress should have intended by the Judicial Code to confer jurisdiction upon the District Courts of the United States of causes of action such as that alleged in plaintiff's petition, and it is clear that it has not by apt words done so.

The conclusion, therefore, is that the cause of action alleged by the plaintiff for the loss of its property is not one of which the District Courts of the United States are given jurisdiction by section 24 of the Judicial Code or the eighth paragraph thereof, and its suit to recover therefor may not rightly be removed from the state court to this court. This conclusion is contrary to the decision in McGoon v. Northern Pac. Ry. Co. (D. C.) 204 Fed. 998, above; but that decision, it seems to me, is not in harmony with the decision of the Supreme Court in Atlantic Coast Line R. R. Co. v. Riverside Mills and Galveston, H. & S. A. Ry. Co. v. Wallace, above, and it must yield to the decisions of the Supreme Court.

If the claim of the plaintiff for $7.20 is a charge for an interstate shipment of freight in excess of the schedule rate filed by the defendant with the Interstate Commerce Commission, it may be a claim arising under the eighth paragraph of section 24 of the Judicial Code. Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; Atchison, T. & S. F. Ry. Co. v. Kinkade (D. C.) 203 Fed. 165. But no such question is presented by this record, and it need not be and is not considered or determined.

The motion to remand is sustained, and the cause remanded to the state court from which it was removed. An order may be entered accordingly.