## TEXAS & N. O. R. CO. v. BINSWANGER & CO. OF TEXAS.

### No. 9549.

Court of Civil Appeals of Texas. Galveston.
July 6, 1931.

Baker, Botts, Andrews & Wharton, Arterbury & Coolidge, and Roy L. Arterbury, all of Houston, for appellant.

King, Wood & Morrow, of Houston, for appellee.

PLEASANTS, C. J.

This suit was brought by appellee against appellant to recover damages in the sum of $12,000 to a shipment of thirty-two cases of plate glass purchased by appellee from the Standard Plate Glass Company of Butler, Pa. The glass was delivered at Butler to the Pennsylvania Railroad Company and was transported under a through bill of lading by that company and its connecting carriers, and delivered by appellant to appellee at Houston, Tex.

After alleging the facts showing the shipment to have been under a through bill of lading, which required appellee to pay all of the freight charges before the shipment was delivered to appellee, and the payment of such freight charges by appellee to appel-

lant, and that the glass was in good condition when received by the Pennsylvania Railroad Company, but when delivered to plaintiff was stained and damaged and some of it broken, the petition further alleges: "Plaintiff further shows the court that in consideration of the promise and liability of the plaintiff for the payment of the freight and other lawful charges, the defendant and its connecting carriers on said through bill of lading promised and agreed to safely carry and deliver said thirty-two cases of plate glass with reasonable diligence and dispatch to the plaintiff, but plaintiff shows that instead of so safely carrying said goods with reasonable diligence and dispatch the defendant and/or its connecting carriers negligently caused or allowed said plate glass to become damaged and be broken and stained and otherwise injured; that they did not carry and transport said goods with reasonable diligence and dispatch but negligently used and consumed an unreasonable length of time from the point of origin to the point of destination; that is, said shipment of plate glass left Butler, Pennsylvania, on or about July 19, 1928, and was not delivered to plaintiff at Houston, Texas, until on or about August 20, 1928, more than thirty days after the shipment started, all of which was to plaintiff's damage in the sum of Twelve Thousand Dollars ($12,000.00)."

Appellant answered with a general demurrer, a general denial, and a special plea of contributory negligence, and a plea that the alleged damage resulted from the inherent nature of the glass which made it susceptible to yellow stain that came from the yellow straw, also from the inherent nature of the yellow straw which caused it to give off yellow stain when it became wet; and appellant alleged that the shipment was loaded in an open gondola car by the shippers as agents of appellee; that an open car was ordered by the shipper; that the glass was packed by the shipper and loaded by them into an open car and said shipment moved from Butler, Pa., to New York by rail in said open car, unprotected from the rain; that said shipment, while in said open car, was subjected to a heavy rainstorm and became wet, which fact caused the glass to stain; that the shippers of said glass well knew that the glass would become stained under such conditions, and that since the glass became wet as a result of the careless and negligent manner in which it was packed, which proximately caused appellee's loss, they were not entitled to recover.

Appellee by supplemental petition admitted that the shippers ordered an open car and that they packed and loaded the car, but that they loaded it in the usual and customary manner, and in the car furnished by the railroad company.

The case was tried before a jury, and at the conclusion of the evidence the court instructed the jury to return a verdict in favor of the plaintiff for the sum of $9,063.30. Such verdict was returned, and judgment rendered for appellee for that amount.

When delivery was made to appellee, a considerable portion of the glass was stained and greatly damaged, and some of it was broken. The evidence shows that the glass was in first-class condition when it was received for transportation by the Pennsylvania Railroad.

The undisputed evidence shows the following facts: The stain resulted from the fact that the packing got wet; the shipment was crated, packed, and loaded by the shippers; the crates were of such size that they couldn't be loaded into a box car, but had to be loaded in an open car; while tar paper was nailed across the tops of the cases in the car, the sides and bottom ends of the crates were exposed to the weather; the open car moved a distance of 500 miles from Butler, Pa., to New York, and there was a considerable rainfall during that time of the year; the shipment was rained on considerably while it was in the open car, and the packing got wet; the cases were packed with yellow straw, which when wet, gave off a yellow stain which will cause glass to become stained; the glass will also become stained by chemical reaction when it remains packed two or three weeks after getting wet; this glass was loaded on the boat direct from the pier, and did not have an opportunity to get wet while being loaded; it was on the boat only seven days, reaching Galveston on August 18th, and, in the opinion of the manager of the plaintiff company, the glass got wet at least two or three weeks before that time; the glass stood upright, on edge, in the cases, and the stained portions were the bottom parts of the glass; the paper in between the glass was wet from twenty-four to thirty-six inches up from the bottom; if the bottom edge of the glass and packing should get wet, the moisture or water will rise by capillary attraction in the paper between the glass.

There was evidence which would sustain a finding by the jury that the glass and paper packing was wet when it reached New York, and received a further wetting from rain which fell on it while being inspected on its arrival, and that this wetting caused the stain and the larger portion of the damages awarded appellee by the judgment.

Upon this state of the evidence, the trial court erred in taking the case from the jury and refusing to submit to the jury the issue of the proximate cause of the damage to the glass, other than the breakage.

There was delay in the shipment after it reached New York which is not clearly accounted for, nor does the evidence disclose how the shipment was cared for during this

delay further than to show that it did not become wet while being transferred from the car into the boat, which transported it to Galveston, nor while it was on the boat. We do not think that the rule, that when goods for interstate shipment are delivered to the initial carrier in good condition, and delivered at destination in a damaged condition, a presumption obtains that the damage was caused by the negligence of the delivering carrier or some of its connecting carriers, can be conclusively applied upon the evidence in this record.

When the defendant's evidence showed that an efficient cause of the damage was the negligent manner in which the goods were packed by the shipper, it should have been left to the jury to determine from all the evidence whether or not such negligent packing was the proximate cause of the injury.

Of course if there had been no evidence tending to show that the damage was proximately caused by the negligence of the shipper, or some cause against which the carrier could lawfully be relieved of liability, the presumption that the damage was caused by the negligence of the carrier would be conclusive. This is true, because the carriers generally have the only means of knowing whether the shipment was handled with care. Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 32 S. Ct. 205, 56 L. Ed. 516. But it would, in our opinion, be unreasonable to extend this presumption so as to deny appellant the right to have a jury pass upon the issue raised by the evidence of the negligence of the shipper as the proximate cause of the damage to the goods.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.