BRINSON & KRAMER v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 29 September, 1915.)

**1. Interstate Commerce—Statutes—Carmack Act—Water Transportation—Damages—Constitutional Law.**

The Carmack amendment to the Interstate Commerce Act, 34 St. at Large, 594, is constitutional and valid, and in case of shipments coming within its terms, the initial carrier is made responsible for any "loss, damages, or injury to the goods carried by it or by any common carrier, railroad or transportation company," not as absolute insurers, but to be fixed and determined according to the principles of general law applicable to common carriers as modified by statutes relevant to the subject.

**2. Interstate Commerce—Water Transportation—Connecting Carriers—Federal Statutes—Limiting Liability—Defenses.**

Where a railroad company receives an interstate shipment of freight, without designation as to route, and any carrier along the usual route of shipment is a carrier by water, and loss or damage occurs by wrong of the latter company, the initial carrier may avail itself of Federal legislation applicable to transportation companies of that character, limiting the quantum of recovery in certain instances, and at times relieving of responsibility, upon the principle that the initial carrier, so far as the shipper is concerned, is held liable for through transportation, and, being liable for the default of the connecting carrier, may avail itself of any defenses or liabilities open to the latter.

**3. Interstate Commerce—Federal Statutes—Water Transportation—Connecting Carriers—State Courts—Jurisdiction.**

Where an initial carrier of an interstate shipment of goods requiring transportation by water along a usual route to its destination is sued in the State court for damages arising while in the possession and control of the connecting carrier by water, the defenses available under the Federal statutes (U. S. Compiled Statutes, secs. 4289, 4283) may be made available in a State court having cognizance and jurisdiction of the cause of action.

**4. Interstate Commerce—Water Transportation—Federal Statutes—Limiting Liability—Negligence—Utmost Care.**

Where the owner of a vessel sets up the Federal statutes limiting his liability, the burden is upon him to show, in order for him to avail himself of the protection afforded by them, that he has provided the vessel with a competent master and competent crew, and that the ship, when she sailed, was in all respects seaworthy; that he therein exercised such utmost care as the most prudent and careful men exercise in their own matters under similar circumstances. 3 U. S. Compiled Statutes, secs. 4289, 4283.

**5. Interstate Commerce—Federal Statutes—Water Transportation—Negligence—Prima Facie Case—Burden of Proof.**

Where it is shown that a railroad company has accepted goods for interstate shipment and that they have not been delivered to the consignee, a *prima facie* case of negligence is established both under the State and Federal laws; and where the railroad seeks the benefit of the Federal statutes limiting liability where the damages sought have occurred while in the course of transportation by a connecting water company, the burden of proof is on the defendant to show such facts as will bring it within the provisions of such statutes; and upon its failure to introduce evidence in this respect, the right will be denied.

APPEAL by plaintiff from *Justice, J.,* at February Term, 1914, of BEAUFORT.

Civil action on appeal from a justice's court and tried on case agreed.

The facts in the case agreed are as follows:

"In this cause it is agreed that the following facts shall be found by the court, and that judgment shall be rendered thereon as the court may determine the law therefrom.

"It is agreed and found as a fact that the plaintiffs delivered to the defendant on 26 January, 1914, seventeen crates of eggs, which were consigned to C. M. Bitten & Co., New York City; that the shipment was made from Belhaven, North Carolina, the point of origin, to Norfolk, Va., over the lines of defendant Norfolk Southern Railroad, and that it was there delivered, in due course of transportation, by the Norfolk Southern Railroad in good order to the Old Dominion Steamship Company on 29 January, 1914; that the Old Dominion Steamship Company accepted said shipment for transportation from Norfolk to the consignee in New York; that the value of said shipment was $140.59; that the Old Dominion Steamship Company, a corporation, operating sea-going vessels from Norfolk to New York and other ports, placed said shipment on its steamer *Monroe,* which sailed from Norfolk bound to New York on 29 January, 1914; that on 29 January, or 30 January, 1914, a collision occurred at sea between the steamship *Nantucket,* of the Merchants and Miners Transportation Company, and the steamship *Monroe;* that said steamship *Monroe,* with all of its freight, was lost by reason of said collision.

"It is further found as a fact that in the proceedings in admiralty against the *Nantucket,* pending in the District Court of the United States for the Southern District of New York, a large number of claims have been filed libeling the *Nantucket* on account of said collision, and that these claims exceed the value of the *Nantucket* by about three times her value. That on 17 February, 1914, the consignees were notified that this shipment had been lost in the collision which had occurred on the high seas between the *Nantucket* and *Monroe.*

"It is further agreed that if upon the foregoing findings of fact, the court should be of the opinion that plaintiff is entitled to recover, then

plaintiff shall recover the amount claimed by him, but that if the court should be of the opinion that no liability attached to the defendant Norfolk Southern Railroad, then judgment of nonsuit shall be entered."

Upon these facts, the court, being of opinion that "no liability attached to the defendant company," gave judgment that defendants go without day, and plaintiff excepted and appealed.

*Tooly & McMullan* for plaintiff.
*Small, MacLean, Bragaw & Rodman* for defendant.

HOKE, J., after stating the case: The amendment to the Interstate Commerce Act, passed by Congress 29 June, 1906, 34 St. at Large, 594, and commonly known as the Carmack amendment, has been several times sustained as a constitutional and valid enactment (*Adams Express Co. v. Croninger*, 226 U. S., 491; *Atlantic Coast Line Ry. v. Riverside Mills*, 219 U. S., 186, etc.), and in these and other decisions construing the law it has been held that, in case of interstate shipments coming within its terms, the initial carrier is made responsible for any "loss, damage, or injury to the goods carried by it or by any common carrier, railroad or transportation company," not as absolute insurer, but to be fixed and determined according to the principles of general law applicable to common carriers and as modified by statutes relevant to the subject. *Express Co. v. Croninger, supra.* And, from a perusal of the language of the statute making the initial carrier responsible for injuries caused by it or by any connecting carrier, and from the provision also contained in the amendment for recoupment by the initial carrier of any other or connecting carrier actually causing the loss, etc., we concur in the view of well considered cases on the subject, that, although the initial carrier may be by rail, if any connecting company along the designated or usual route of shipment, there being no route designated, is a carrier by water, and the loss or injury occurs by the wrong of such company, the initial carrier may avail itself of the Federal legislation applicable to transportation companies of that character, limiting the quantum of recovery in certain instances, and at times relieving of responsibility altogether. The principle being that, in cases coming within the effects of the law, the initial carrier, so far as the shipper is concerned, is held to have contracted for through transportation and is liable for the default of itself or any connecting carrier, and may avail itself of any defenses or of limitations of liability open to the carrier causing the loss. *The Hoffman,* 171 Fed., 455; *Riverside Mills v. R. R.,* 168 Fed., 987; *Lord v. S. S. Co.,* 4 Sawyer, 292; *same case,* 15 Fed. Cases, No. 8506.

On this question, in *Riverside Mills v. R. R.,* it was held: "In an action by the shipper against an initial carrier for loss of goods shipped

428 IN THE SUPREME COURT. [169

in interstate commerce, under amendment to Hepburn Act of 29 June, 1906, the carrier may make any proper defense which can be made in a court of law and which any connecting carrier on the line of which the goods were lost or the injury occurred might make." And, in the case of *Lord v. Goodhall, supra,* it was held, among other things, that "A party using, for the transportation of his goods, an instrument of commerce which is subject to the regulating power of Congress, must use it subject to all the limitations imposed upon its use by Congress." Both of these causes were affirmed, on writ of error, in Supreme Court of the United States; the first in *R. R. v. Riverside Mills, supra,* and the second in *Lord v. Goodhall,* 102 U. S., 541. The deliverance of the higher Court, however, dealt with other, chiefly constitutional, questions, and the precise point we are discussing was not directly presented; but, as stated, from the language of the statute and the fact that recovery over is allowed the initial carrier, and from the reason and justice of the position, we are well assured that the lower Federal courts have taken the correct view, and that in case of loss by sea the initial carrier may avail itself of these Federal statutes where the same properly apply.

In the cases cited by counsel for appellant, *R. R. v. Carl,* 227 U. S., 639, and *R. R. v. Wallace,* 223 U. S., 481, it does not appear that all or any part of the shipment was lost at sea, and there was no occasion to discuss or decide the matter.

The Federal statutes, then, being applicable to shipments of this character, the question recurs whether, on the facts agreed upon, the defendant is in position to avail itself of these provisions in discharge or reduction of the liability that would otherwise attach. These laws, being chapter 5, Laws 1913, classified in United States Compiled Statutes under section 4289, p. 2946, by which the owner of a vessel is relieved of responsibility, under certain conditions, by reason of faulty navigation and other specified causes, and section 4283 of the same volume, by which the liability of the owner is restricted to the "value of his interest in the vessel and its freight then pending, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred without the privity or knowledge of such owner or owners," etc., have been many times construed by the Supreme Court of the United States, and it is very generally recognized that defenses existent by reason of the statutes may be made available in a State court having cognizance and jurisdiction of the cause of action. *R. R. v. Wallace,* 223 U. S., 481; *Riverside Mills v. R. R.,* 168 Fed., 1987, and in reference to the last mentioned section, that on limitation of liability, it is held, in *Norwich v. Transportation Co.,* 118 U. S., 468; *Norwich v. Wright,* 13 Wallace, 104, and other cases, the value of the

vessel must be estimated after the collision, and, in case the vessel is then sunk and no freight earned, there is usually an end of liability on the part of the owners.

It is understood, however, that in order for an owner to avail himself of the protection of these statutes he must have exercised due diligence in supplying a seaworthy vessel, and the burden is on him to show this. This requirement appears in the act of 1893, 3 Compiled Statutes, p. 2496, as construed in *The Sugar Refining Co. v. The Wildcraft*, 201 U. S., 378, and *The Southwark*, 191 U. S., 1, and *The Carib Prince*, 170 U. S., 655, and, in reference to section 4283, it is held correctly, we think, that the failure of the owner to exercise proper diligence in providing a seaworthy vessel will render him privy to the fault, and, if the vessel is lost in consequence, the limitation of liability in this section will not be allowed to prevail, the section only operating where the loss is "without the privity or knowledge of the owner." *Lord v. Steamship Co.*, 4 Sawyer, 292; 7 Cyc., 389.

In the last named case it was held: "The word 'privity' of the owner, used in section 4283 of the Revised Statutes, means some fault or neglect in which the owner of the vessel personally participates; and 'knowledge,' as used, means some personal cognizance, or means of knowledge of which he is bound to avail himself, of a contemplated loss, or of a condition of things likely to produce or contribute to a loss, without adopting appropriate means to prevent it." "The owner is bound to exercise the utmost care in the selection of a competent master and crew, and in providing a vessel in all respects seaworthy; and if, by reason of any neglect or fault in these particulars, a loss occurs, the owner is in privity within the meaning of the statute"; and *Sawyer, J.*, speaking to the position, said: "As used in the statute, the meaning of the words 'privity or knowledge,' evidently, is a personal participation of the owner in some fault or act of negligence causing or contributing to the loss, or some personal knowledge, or means of knowledge of which he is bound to avail himself, of a contemplated loss, or of a condition of things likely to produce or contribute to the loss, without adopting appropriate means to prevent it. There must be some personal concurrence, or some fault or negligence on the part of the owner, himself, or in which he personally participates, to constitute such privity, within the meaning of the act, as will exclude him from the benefit of its provisions (3 Wallace, 153; 113 Mass., 499).

It is the duty of the owner, however, to provide the vessel with a competent master and a competent crew, and to see that the ship, when she sails, is in all respects seaworthy. He is bound to exercise the utmost care in these particulars—such care as the most prudent and careful men exercise in their own matters under similar circumstances; and if, by reason of any fault or neglect in these particulars, a loss occurs, it is with

his privity within the meaning of the act. But the owner, under this act, is not an insurer. If he exercises due care in the selection of the master and crew, and a loss afterwards occurs from their negligence, without any knowledge or other act or concurrence on his part, he is exonerated by the statutes from liability beyond the value of his interest in the ship and the freight pending."

In *The Southwark,* 190 U. S., *supra,* on the proper construction of the Harter Act, as to the obligation of the owner to supply seaworthy vessel, *Day, J.,* delivering the opinion, said: "Section 3 must be read with section 2 to effectuate the purpose of the act, and shows an intention on the part of Congress to relax, in certain respects, the harshness of the previous rules of obligation upon ship owners, provided the owner shall exercise due diligence to make the vessel seaworthy in all respects, in which event neither the vessel nor the owner shall be liable, among other things, for faults of management or for loss from inherent defects, quality, or vice of the things carried." Of this feature of the law it was said by *Mr. Justice Shiras,* delivering the opinion of the Court in the case of *The Irrawaddy,* 171 U. S., 192, 193, *sub nom. Flint v. Christall,* 43 L. Ed., 1132, 18 Sup. Ct. Rep., 833: "Plainly, the main purposes of the act were to relieve the ship owner from liability for latent defects not discoverable by the utmost care and diligence, and, in the event that he has exercised due diligence to make his vessel seaworthy, to exempt him and the ship from responsibility for damage or loss resulting from fault or errors in navigation or in the management of the vessel. . . . Although the foundation of the rule that forbade shipowners to contract for exemptions from liability for negligence in their agents or employees was in the decisions of the courts that such contracts were against public policy, it was, nevertheless, competent for Congress to make a change in the standard of duty, and it is plainly the duty of courts to conform in their decisions to the policy so declared." The effect of this law is not to relieve the owner from the general duty of furnishing a seaworthy ship, but to limit his liability, in certain particulars, and upon the condition named in the statute. *The Carib Prince,* 170 U. S., 655, 42 L. Ed., 1181, 18 Sup. Ct. Rep., 753. Before the passage of the act the initial obligation could be limited in certain particulars by special contract not involving negligence of the owner. Since the passage of the act, as to cases coming within its terms, before the owner can have the benefit of the relief provided by section 3 he must have exercised due diligence to provide a seaworthy vessel, capable of performing her intended voyage." And, in *The Wildcraft, supra,* opinion by the same judge, it was directly held: "The burden of proving that a vessel was seaworthy at the time of beginning the voyage, or that due diligence had been used to make her so, rests upon the ship owner claiming the benefit of the exemption provided in the Harter Act of 13 February, 1893 (27 Stat. at L., 445, ch.

---

---

105, U. S. Comp. Stat. 1901, p. 2946), sec. 3, against errors of management or navigation, whether or not there is any evidence to the contrary."

Applying these principles to the facts as agreed upon, we are of opinion there was error in giving judgment for defendant, for, while these facts show that the steamer *Monroe* was sunk and the vessel and cargo lost, requiring a return of unearned freight, these facts fail to disclose or supply any evidence that the vessel was properly manned or equipped or that the same was seaworthy, within the meaning of the law.

We are not inadvertent to the finding that the *Nantucket*, the other vessel in the collision, had been libeled for amount three times the value of such vessel, but this throws no light on the question of the *Monroe's* liability in the premises. Even if fault is established on the part of the *Nantucket,* we know that it is not infrequently true that both vessels are at fault, and that provision is made for adjusting liability in such cases.

The goods having been delivered to defendant for transportation, and a failure to deliver being admitted, there is a presumption of negligent default, both under State and Federal laws (*R. R. v. Wallace,* 223 U. S., 481; *Harper v. Express Co.,* 144 N. C., 639; *Meredith v. R. R.,* 137 N. C., 478); and defendant, seeking protection under and by virtue of the Federal statutes, being required, in order to maintain such defense, to show affirmatively that the carrier by water, where the loss occurred, had supplied a seaworthy vessel, and there being no proof offered of that fact, it must be held that the position in relief of liability has not been established, and, on the record, there should be judgment for plaintiff.

This will be certified, that judgment be entered in accordance with this opinion.

Reversed.