Civil action. The action was to recover damages to live-stock, alleged to have been negligently injured in shipment over defendant roads, in March, 1912. Defendants denied liability. The evidence having been submitted, on motion, there was judgment of nonsuit as to each and all of defendants, and plaintiffs excepted and appealed.
There were facts in evidence tending to show that, on or about 8 March, 1912, plaintiffs, under a live-stock contract, shipped a lot of horses and mules from Flemingsburg, Ky., to Kinston, N.C. passing over the Cincinnati and Flemingsburg Railroad, the initial carrier, to Johnston, Ky.; thence over the Louisville and Nashville Railroad to Knoxville, Tenn.; thence over the Southern Railway to Goldsboro, N.C.; thence over the Norfolk Southern to Kinston, N.C. where, on 12 March, they were delivered to plaintiffs in very bad condition; two of them so injured that one of them died that night and one the next day, and another, worth $160, had his eye hurt so that he went blind and was sold for $15, his value on the Kinston market, and fifteen others in bad physical condition, etc.; that the condition of the stock was called to the attention of the railroad agent of the Norfolk Southern, at Kinston, N.C. as they were being unloaded, and he requested plaintiffs to take them over to plaintiffs' own barn and he would then come over, where they could be more thoroughly examined.
There was testimony tending to show that the stock was in good order and condition when shipped at Flemingsburg, Ky., and also that they continued so until delivered to the Louisville and Nashville Railroad, at Johnston, Ky., and the contract of shipment was also offered in evidence, containing a provision as follows: "As a condition precedent to the shipper's right to recover any damage for loss or injury to said animals, he will give notice in writing of his claim thereof to the (207) agent of the railroad company or other carrier from whom he receives said animals before said animals are removed from the place of destination above mentioned, or from the place of delivery of the same, to the said shipper, and before said animals are mingled with other animals," etc., and it was shown, further, that the claim for said wrong and injury was not made by plaintiffs until 2 April, 1912, and after the stock had been removed from the terminal station.
On these, the facts chiefly relevant to the issue, it is urged for appellees, as we understand the argument, that the judgment of nonsuit *Page 260 
should be sustained, by reason of certain of the more recent amendments to the Interstate Commerce Act, and notably the statute known as the Carmack amendment, 29 June, 1906, 34 Statutes, 595, which, as construed by well considered decisions of the Supreme Court of the United States, has placed the entire subject of interstate shipments under Federal control and has superseded all State policies and regulations in conflict with these provisions, and, as a consequence, the principle heretofore prevailing in this State, that on proof of delivery of livestock or other goods to an initial carrier, in a continuous line of shipment in good condition, and a delivery by a final carrier in a damaged condition, importing negligence, aprima facie case was made against the carrier sued, permitting the shipper to go to the jury on the question of such carrier's liability, may no longer be recognized or enforced; and this being true, there was no evidence offered to sustain the present demand.
A perusal of the cases cited, R. R. v. Fur. Co., 237 U.S. 597; ExpressCo. v. Cloninger, 226 U.S. 491; R. R. v. Riverside Mills, 219 U.S. 186, and others of like import, seem to be in full support of the premise of this position; but, to our minds, it does not at all follow that the rule heretofore prevailing in this State in reference to the proper trial of causes of this character has been abrogated. A consideration of our decisions on this subject will show that it is a rule of proof, valid, on the principle very generally recognized here and elsewhere, that, in a judicial trial, when facts relevant to an issue lie peculiarly within the knowledge of one of the litigants, such litigant has the burden of showing them forth in evidence; a principle very insistent where otherwise the other party would be practically deprived of testimony on the issue that he is justly entitled to have. This rule of evidence was applied with us, as to the initial carrier, in Meredith's case, 137 N.C. 478-484, whereConnor, J., speaking to the subject, cites authority as follows:
"The principle is stated by Mr. Justice Brown in U.S. v. R. R.,191 U.S. 84, thus: `When a negative is averred in the pleading or the plaintiff's case depends on the establishment of a negative, and the (208) means of proving the fact are equally within the control of each party, then the burden of proof is upon the party averring the negative; but when the opposite party must, from the nature of the case, himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party who is in possession of the proof should be required to adduce it; but upon his failure to do so we must presume it did not exist, which of itself establishes a negative.' He further says: `This burden, however, which was simply to *Page 261 
meet the prima facie case of the Government, must not be confounded with the preponderance of evidence, the establishment of which usually rests upon the plaintiff.' The exact question was considered by the Supreme Court of Vermont in Brintnall v. R. R., 32 Vt. 665, Poland, J., saying: `The argument is that, showing the box did not arrive at Boston, the end of the route, but was lost, does not prove or tend to prove the defendants did not deliver it to the next carrier, because it might have been lost between Castleton and Boston. It must be admitted that it is very inconclusive proof of the fact, but still we think it has some tendency to establish it. The box is proved to be in the hands of the defendants; there is no evidence that anybody else ever had it, or that it was ever in the possession of any other carrier in the line. The usual and ordinary course of things, what is always expected and what generally proves true, is that goods forwarded upon such a line arrived at their destination, and therefore the fact that goods do not arrive at one end of the line is some evidence they were not sent from the other. . . . But we place it upon the ground mainly that this was really all the proof the nature of the case permitted to the plaintiff, and that proof of a delivery by the defendants to the next road was a matter that was peculiarly within the power of the defendant, and not at all in the power of the plaintiff, unless the defendant and the connecting roads preserved evidence of the transfers of all freight from one road to another. . . . And on proof that any carrier on the route received the goods in good condition, the burden of proof rests upon such carrier to show delivery in the same condition to the next carrier or to the consignee, it being peculiarly and almost solely within its power to make such proof." 3 Wood on Railroads, 1926; R. R. v.Tupelo Co., 67 Miss. 35; R. R. v. Emrich, 24 Ill. App. 245. And, as to the final carrier, in whose possession the goods were found in a damaged condition importing negligence, in Mitchell v. R. R., 124 N.C. 236, cases that have been several times since recognized as authorities;Brinson v. R. R., 169 N.C. 425; Lyon v. R. R., 165 N.C. 143;Harper v. Express Co., 144 N.C. 639. The same principle is upheld in well considered cases in other State jurisdictions, R. R. v. Slattery,76 Neb. 721, and R. R. v. Williams, 55 L.R.A., 289; and a like position for the trial of causes obtains also in the Federal (209) courts. R. R. v. Wallace, 223 U.S. 481; Brinson v. R. R., supra,86 S.E. 371-374. In R. R. v. Wallace, supra, Associate Justice Lamar, delivering the opinion, said: "Thus considered, when the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or *Page 262 
by contract was then cast upon the carrier. The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such proof."
And, in our opinion, there is nothing in the Federal legislation that interferes with this principle of evidence as a rule of proof. It is true that in the decisions of our highest court, dealing with the Carmack and other amendments, it is held "that the initial carrier is made responsible for any loss, damage or injury to the goods carried by it, by any common carrier, railroad or transportation company, not as absolute insurers, but to be fixed and determined according to the principles of general law applicable to common carriers and as modified by statute relevant to the subject," Brinson v. R. R., citing Express Co. v.Cloninger, and that the opinion of Mr. Justice Lamar, just cited, is dealing with a case against the initial carrier. It is true also that these cases hold that the proviso in the Carmack amendment preserving to the interstate shipper any remedy or right of action he may have under existing law has reference by interpretation to such rights and remedies as he may have under the law as it is recognized and enforced in the Federal courts (Express Co. v. Clonginger, supra), but it is also held that the shipper's right of action, accruing to him under that law, may be enforced in the State courts having jurisdiction. R. R. v.Wallace, supra. Although by the amendment the initial carrier has been made responsible for the negligent default of each and all the connecting carriers in an interstate shipment, there is nothing in this provision which should prevent liability from attaching to the intermediate or final carrier against whom such default could be established by proper evidence. This has been directly held in several well considered cases. Treadwell v. R. R., 150 Wis. 259; St. L. Coast R. Co.,13 Ga. App. 102, 78 S.E. 1019, and other cases cited in note to R. R. v.Alexander, 227 U.S. 218; 36 Anno Cases, 83. And as a rule of proof, just in itself and recognized as a general principle of the law of (210) evidence, we think that the principle referred to in the trial of that cause should still prevail. In the recent case of R. R. v.Furniture Co., supra, a decision much relied on by defendant, there is decided intimation in the opinion of Associate Justice Holmes that the principle, as a rule of proof, presents no interference with the Carmack or other amendments, and the State statute in that case was set aside because it imposed a penalty and, as a matter of substantial right, fixed the carrier sued with liability if it should fail within forty days to *Page 263 
inform the claimant, in the exercise of due diligence, when and where and by which carrier the goods had been damaged.
It is further contended that the nonsuit is proper because of the admitted fact that the stock was removed to the stables of plaintiffs before written notice of the claim was presented and in violation of section 11 of the contract. This provision has been recognized as a valid stipulation with us (Duvall v. R. R., 167 N.C. 24, 25, citing Austin v.R. R., 151 N.C. 137; Selby v. R. R., 113 N.C. 594), and it has been also repeatedly held that the stipulation may be waived by the company and will be considered waived if the company or its agents in charge had knowledge of the damage and injury to the stock at the time the same were unloaded at the point of destination. Kime v. R. R., 156 N.C. 451; s.c.,153 N.C. 398; Jones v. R. R., 148 N.C. 581.
In the present case there was testimony not only that the railroad agent at Kinston had knowledge of the claim and of the injury to the stock, but that he requested plaintiffs to take them from the company's receiving pen over to plaintiffs' stables, where he could come over and make a more careful examination. It is insisted, however, that this principle of waiver should no longer prevail, as to allow it would have the effect of granting a preference in favor of plaintiffs contrary to the Interstate Commerce Act and amendments thereto.
In these statutes conferring upon a commission the power to make reasonable and necessary regulations as to interstate shipments, it was no doubt the primary purpose to prevent undue preferences and discriminations among shippers; but there is, in our opinion, nothing in the principle objected to here that in any way militates against this salutary purpose. The stipulation, inserted to protect the carrier from improper or unconscionable claims, under circumstances where he would have no means of rebutting proof available, has no natural or necessary connection with or influence upon the rates charged, nor does the principle of waiver, as applied in this State, have any tendency to create a preference. There have been, as yet, no authoritative decisions to that effect, and, as now advised, we are of opinion that the principle as it has obtained here applies and should control in the present case. We have already so held in a case at the present term, Baldwin v. R. R.,ante, 12, in which Associate Justice Allen, delivering the opinion, said: (211)
"The rule permitting knowledge to supply the place of written notice is not a discrimination between railroads, nor is it a preference in favor of a particular shipper at the expense of others. It is a mode of proof applicable alike to all railroads and in favor of all shippers, and it is enforced against a carrier who has had possession of the property *Page 264 
with every opportunity to know the extent of the injury and its cause."
In the present case, as stated, the agent at the terminal station not only had his attention called to the condition of the stock at the time they were first unloaded, but requested plaintiff to take them to his stables, where they could be examined with more care. There is nothing tending to show that the stock had been mingled with other stock before this examination was made, and, on proof tending to show that this shipment passed en route into the control of the defendant, the Louisville and Nashville Railroad Company, when in good condition, and was turned over at the point of destination by the Norfolk and Southern in a damaged condition and injured to such a degree that two of them died and one went blind and was sold at a nominal sum, we are of opinion that plaintiff was entitled to have his claim submitted to the jury on the issue as to defendants' liability.
There is error in the judgment of nonsuit, and the same will be set aside.
Reversed.
Cited: Aydlett v. R. R., 172 N.C. 50 (1f); Reynolds v. Express Co.,172 N.C. 494 (3f); Bryan v. R. R., 174 N.C. 177 (1o); Taft v. R. R.,174 N.C. 212 (3po); Morris v. Express Co., 183 N.C. 147 (1f); Dixon v.Davis, 184 N.C. 210 (3p); Fuller v. R. R., 214 N.C. 652 (1f).