N. T. AYDLETT, Trading as C. C. AYDLETT & SON, v. NORFOLK SOUTHERN RAILROAD COMPANY, NORFOLK AND WESTERN RAILWAY COMPANY, et al.

(Filed 20 September, 1916.)

1. **Carriers of Goods—Delivery to Carrier—Title—Damages—Party Aggrieved.**

Ordinarily the title to a shipment of goods by common carrier passes to the consignee upon their acceptance by the carrier, and he may sue for damages thereto in transit; but when it is shown that the consignee refused to accept the damaged goods, and that the sale has been canceled by consent, the consignor may maintain his action against the carrier for damages.

**2. Carriers of Goods—Interstate Commerce—Connecting Lines—Intermediate Carrier—Damages—Parties—Carmack Amendment.**

Where a second carrier in a connecting line of carriers of a shipment of a car-load of goods has caused damages thereto by loading them improperly, an action may be maintained against it to recover the damages thus caused, and it may not avoid liability under the Carmack Amendment to the Interstate Commerce Act on the ground it was not the initial carrier.

**3. Carriers of Goods—Connecting Lines—Contractual Notice—Intermediate Carrier—Principal and Agent.**

Where the second carrier in the connected line of shipment of a car-load of goods causes damage to the shipment by improperly loading it, it may not defeat an action to recover such damages, when the required notice within four months has been filed with and accepted without comment by it, on the ground that such notice had not been filed with the initial or final carrier under the terms of the contract of carriage. The doctrine of notice to the agent is applied to the facts of this case.

WALKER, J., dissenting.

CIVIL ACTION tried before *Allen, J.,* at March Term, 1916, of CURRITUCK.

The following issues were submitted to the jury:

1. Has the plaintiff been damaged by the negligence of the defendant Norfolk Southern Railroad, by reason of transporting said sweet potatoes in an unsuitable and unfit car, as alleged? Answer: "Yes."

2. What damage, if any, is the plaintiff entitled to recover of the defendant Norfolk Southern Railroad? Answer: "$256.55, with interest from 23 December, 1913."

Similar issues were submitted as to the other two defendants and were answered in like manner. From the judgment rendered, the defendants appealed.

*Ehringhaus & Small for plaintiff.*

*C. M. Bain, J. Kenyon Wilson for defendant Norfolk Southern Railroad Company.*

*Guthrie & Guthrie, Ward & Thompson for defendant Norfolk and Western Railway Company.*

*Tye, Peeples & Tye for defendant Louisville and Nashville Railroad Company.*

BROWN, J. This action is brought to recover damages to a car-load of sweet potatoes, delivered by the plaintiff to a steamboat company at Brinsons Landing in North Carolina, consigned to Schafer Bros. at Louisville, Ky. The evidence is to the effect that they were delivered to and receipted for by the Norfolk Southern Railroad Company in apparent good order on 16 December, 1913, and were loaded by the said

company in a car furnished by it which had just previously been used in transportation of a load of flour, and for that purpose had been lined with paper, which was not removed when the potatoes were loaded in the same car.

In consequence of this the testimony shows that the ventilation of the car was cut off and it was practically air-tight. This caused the pota-. toes to rot in the car. The shipment was routed by the Norfolk Southern via Norfolk and Western and Louisville and Nashville to Louisville, Ky. On account of the bad condition of the potatoes on arrival, the consignees refused to receive them, and notified the consignor, the plaintiff, at once. It was agreed that the contract of sale should be rescinded and the potatoes sold on account of the plaintiff.

1. The defendants contend that the plaintiff cannot recover, because the plaintiff is not the real party in interest, and that the suit, if maintainable at all, should be brought by the consignee, Schafer Bros.

As a general rule, it is true, where goods are shipped upon an open bill of lading, the title passes to the consignee at the time they are delivered to the carrier, and any ensuing damage must be recovered by the consignee. *Stone v. R. R.*, 144 N. C., 228.

Notwithstanding this general rule, it is open to the consignor to show that the goods were shipped on consignment or that owing to peculiar circumstances, by agreement between himself and the consignee, the title had revested in the consignor while the goods were *in transitu,* and that the consignor has a pecuniary interest in the proper performance of the contract of shipment.

The identical case is presented in *R. R. v. Guano Co.,* 103 Ga., 590, where it is held that where a consignee of freight refuses to receive goods on account of damage done to them in the hands of the common carrier, and the goods are subsequently thrown back on the hands of the consignor, the latter has a right to bring an action for such damages against the carrier. This case is cited with approval by this Court in *Buggy Co. v. R. R.,* 152 N. C., 122.

2. The defendants contend that they are not initial carriers, and that by virtue of the Carmack Amendment to the Interstate Commerce Act they are exempt from suit by the plaintiff. If this contention is correct, then the said amendment, admittedly passed in the interest of the shipper, would be entirely nugatory and utterly fail to accomplish the purpose for which it was enacted.

It was not intended to exempt any carrier legally liable from suit. In this case the potatoes were delivered to the steamboat company and by that carrier delivered at Elizabeth City directly to the Norfolk Southern Railroad. It was this defendant that furnished the car in which the potatoes were loaded, and, if the evidence is to be believed,

negligently failed to prepare the car for such shipment. It was practically air-tight, thereby causing the potatoes to rot before they reached the point of destination. *Mewborn v. R. R.,* 170 N. C., 205; *Brinson v. Kramer,* 169 N. C., 425; *R. R. v. Sperber Co.,* 117 Md., 595.

3. It is next contended that the plaintiff cannot recover because the claim was not filed with the initial carrier, to wit, the steamboat company, within four months. The evidence shows that a written claim was filed with the defendant the Norfolk Southern Railroad Company within the time required by law, and if it is not sufficiently definite, as is now contended, it does not appear that the said defendant ever made any objection to it or demanded a more particular statement. A written claim was also filed with the other two defendants.

Practically all of the evidence shows that the injury was occasioned by the negligence of the defendant the Norfolk Southern Railroad Company, and that that defendant received full notice of the claim in writing. Nothing further than that can reasonably be required of the plaintiff.

We have held that the stipulation on the bill of lading requiring such notice is a reasonable and valid requirement, and we decided in *Grocery Co. v. R. R.,* 170 N. C., 241, that the notice of claim must be filed where the shipment originated. In that case the defendant was the initial carrier, to whom no notice was given, nor was the claim "filed by the consignor at the point of origin, even if he had any right to file it at all, and certainly he did not have this right as consignor" (page 243). That action was brought to recover a penalty given by a penal statute, which must be strictly construed. It was not brought to recover damages from a carrier that had caused the loss and with whom claim had been duly filed.

The defense in this case is based, not on a statute, but on the contract of shipment, that declares that "Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable."

The initial carrier and the last carrier are thus made the agents of all the other carriers for the purpose of filing claims for damage. In our judgment that provision was not intended nor can it have the effect to preclude the claimant from filing his claim with and from suing the carrier that actually caused the injury. In this case it is undisputed that the potatoes were delivered to the defendant the Norfolk Southern, in good condition, and that carrier caused the injury by furnishing an unventilated car.

It is true, the initial carrier was the steamboat company and that no claim was filed with that company, but as it was filed with the Norfolk Southern, the carrier that received the potatoes from the steamboat company and caused the damage, we think the stipulation in the bill of lading was substantially complied with. Surely, notice to the agent may be dispensed with when notice to the principal is given. To hold otherwise would be "sticking in the bark." *Cassante ratione legis cessat et ipsa lex.*

If the injury had not been caused by the negligence of the Norfolk Southern, then the contention of defendant that notice of claim must have been filed with the steamboat company, in order to bind the Norfolk Southern as well as other carriers, would be more reasonable.

Upon a review of the whole record, we find

No error.

WALKER, J., dissenting: The provision in regard to the claim for damages requires that it "must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery, . . . and unless claims are so made the carrier shall not be liable." This stipulation has been held by the highest Federal court to be reasonable and binding, and unless there is a compliance with it there can be no recovery for loss of or damage to the goods shipped. *M. H. and T. Railway Co. v. Harriman,* 227 U. S., 657. This being an interstate shipment, the Federal law applies. *N. P. Railway Co. v. Walls,* 36 S. C. Report. (U. S.), 493. The reasonableness of the provision is not disputed, and being a matter arising out of contract, it is to be enforced according to the *terms* of the contract, as parties have the right to contract as they please if there is no fraud, nor violation of any rule of law. If the contract is plainly expressed, there is no room for construction, and we enforce it as it is written. It is not for us to say whether it was wise or expedient for the parties or either of them. The reason for making it is left with the parties by the law, and we cannot unmake or even amend it because we may think it is not according to our idea of reason. The rule in this regard is well stated by a learned text-writer: "It is not the province of a court, however, to change the terms of a contract which has been entered into, even though it may be a harsh and unreasonable one. Nor will the dictates of equity be followed if by doing so the terms of a contract are ignored; for the folly or wisdom of a contract is not for the court to pass upon. Its terms, however onerous they may be, must be enforced if such is the clear meaning of the language used, and the intention of the parties using that language." 9 Cyc., 587. Where meaning is doubtful, such matters may be considered.

The meaning here is clear that the claim shall be made to the receiving or delivering carrier. There can be no doubt about it. The parties, as we have seen, had the right so to contract, whether with or without a good or sufficient reason. The maxim, *"Cessante ratione legis cessat et ipsa lex,"* has no application whatsoever to a case of this kind. It is a most excellent one when properly applied, but is "out of place" here. Nor do defendant's counsel "stick in the bark" when they merely insist, according to the usual rule, that a contract must be enforced as the parties have made it, and not as we think it should have been made. But if the maxim, *Cessant ratione,* etc., applied in a case of contract where the words of the parties must control, the reason has not ceased because there is a valid and substantial one for the requirement as to filing claims at either end of the line. Goods are often, and in the case of shipments on through bills of lading, transported in sealed cars, and the seals are not broken until the transit has ended. The carrier upon whom may rest the ultimate liability for any damage to the goods by reason of his negligence might not know of it while the goods are in his possession, nor until they are unloaded at their destination. He may designate his agent, and in this case either the initial or final carrier, instead of himself, as the one to receive notice of the claim. It is expedient that he do so, as, knowing nothing about it himself, he would at last have to communicate with him in order to get proper information, and it would save time and be more convenient that the agent should first be notified, as he, having knowledge of the facts, could notify his principal of them without delay. But more to the point is this reason, that the provision was not inserted merely that the carrier may ascertain if there has been negligence, but that he may inform himself as to the *extent of the damage* or loss, and prevent, not so much the assertion of false claims as to negligence, as false and exorbitant claims in the amount demanded. Therefore, the agent, who knows the facts, is selected as the one with whom the claim must be filed.

It would seem sufficient, though, to say that the highest court having jurisdiction of this question has held that the stipulation is reasonable and valid, and must be observed by the parties to the shipment according to its terms as expressed by the parties. It may well be added that the Interstate Commerce Commission has given its approval to this requirement in bills of lading, as one that must be complied with. It should not be overlooked that one term of this stipulation is that if the claim is not filed as therein provided, the delinquent carrier shall not be liable. The Court has written into this contract something that is not there, and made for the parties a contract which they had not made for themselves. If parties to a contract do not offend against any principle of the law in making their contract, "they are a law unto themselves," and are not required to make a reasonable one, but may contract without any

special reason, and even against their own interests, as we have seen. It is only when the language is ambiguous that we may resort to construction and consider what is just or expedient. If parties make a contract which turns out to be unfavorable to them, it is their own fault, and the law affords no remedy.