CHICAGO & E. I. R. CO. v. COLLINS PRODUCE CO.

(Circuit Court of Appeals, Seventh Circuit. July 25, 1916. Rehearing Denied September 27, 1916.)

No. 2155.

1. CARRIERS ☞185(1)—CARRIAGE OF GOODS—INTERSTATE COMMERCE—CARMACK AMENDMENT.

Carmack Amendment to Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386, as amended by Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [Comp. St. 1913, § 8592]), declaring that the initial

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

carrier shall be liable to the lawful holder of the bill of lading or receipt for any loss, damage, or injury caused by it or by any connecting carrier, does not impose upon the shipper the burden of establishing, in a suit against the initial carrier, that the loss was in fact caused by the initial or connecting carrier, but merely extends the common-law liability of the initial carrier to all losses, whether occurring on its line or that of a connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 835–844; Dec. Dig. ☞185(1).]

2. CARRIERS ☞132—CARRIAGE OF GOODS—ACTIONS.

In an action against a carrier for loss of goods, the shipper is not bound to show that the goods were lost through any act of the carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 578–582, 605; Dec. Dig. ☞132.]

3. CARRIERS ☞119—CARRIAGE OF GOODS—DECLARATION OF MARTIAL LAW.

The mere declaration of martial law in a district will not relieve a common carrier operating therein of all liability to the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 523–530; Dec. Dig. ☞119.]

4. CARRIERS ☞215(1)—CARRIAGE OF GOODS—LIABILITY.

Where martial law was declared in a flood district and at the suggestion and instigation of the carrier a shipment of chickens was appropriated by the military authorities, the carrier, having caused the appropriation, cannot defeat recovery by the shipper on the ground that there was a confiscation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 923 ; Dec. Dig. ☞215(1).]

5. CARRIERS ☞122—CARRIAGE OF GOODS—ACT OF GOD.

Where a shipment is caught in a flood of so unusual a character as to constitute an act of God, the carrier is not relieved of all liability, but is bound to exercise reasonable diligence to save the shipment or prevent additional loss.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 537, 538, 557–559; Dec. Dig. ☞122.]

6. CARRIERS ☞132—CARRIAGE OF GOODS—LOSS OF GOODS.

Where goods are lost by a common carrier in transit, the carrier has the burden of showing that the loss resulted from some cause for which the carrier was not responsible in law or by contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 578–582, 605; Dec. Dig. ☞132.]

7. CARRIERS ☞123—CARRIAGE OF GOODS—ACT OF GOD.

Where goods are injured or a shipment lost through the joint influence of the carrier's negligence and act of God, the carrier is not relieved from liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 506, 507, 539–543; Dec. Dig. ☞123.]

8. CARRIERS ☞230(1)—CARRIAGE OF GOODS—ACTIONS—EVIDENCE—JURY QUESTION.

Whether a shipment of chickens in possession of a carrier which was caught in a flood and held up was confiscated by military authorities. martial law being declared in the district, in such a manner as to free the carrier from responsibility, *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962; Dec. Dig. ☞230(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9.** APPEAL AND ERROR ⬤⟹882(8)—ESTOPPEL—READING DEPOSITIONS IN EVIDENCE.

Where defendant read in evidence depositions taken by plaintiff, defendant cannot complain on appeal that the depositions contained incompetent and hearsay evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3597, 3598; Dec. Dig. ⬤⟹882(8).]

**10.** CARRIERS ⬤⟹228(1)—CARRIAGE OF GOODS—AGENTS—AUTHORITY.

The authority of the superintendent or assistant superintendent of a division of a railroad company to bind the company in disposing of a shipment of chickens, stopped in transit by a flood, can be inferred without other evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957, 958; Dec. Dig. ⬤⟹228(1).]

**11.** CARRIERS ⬤⟹228(3)—CARRIAGE OF GOODS—ACTIONS—EVIDENCE.

Where, pursuant to the bill of lading requiring presentation of claim before suit, a shipper presented his claim for poultry lost in transit, the claim in an action therefor is admissible in evidence to show compliance with the bill of lading though setting forth the price of the poultry.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ⬤⟹228(3).]

In Error to the District Court of the United States for the Eastern District of Illinois.

Action by the Collins Produce Company against the Chicago & Eastern Illinois Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

The Collins Produce Company, defendant in error, herein called "plaintiff," brought suit against the Chicago & Eastern Illinois Railroad Company, plaintiff in error, herein called "defendant," for damages occasioned by the loss of a car of chickens. Verdict and judgment for plaintiff for $4,125.82.

Plaintiff shipped a car of chickens from Cypress, Ill., for Newark, N. J., taking defendant's bill of lading therefor. The shipment left Cypress March 21st over defendant's line and was conveyed to Cincinnati, where it was delivered to a connecting carrier, the Cincinnati, Hamilton & Dayton Railroad Company for forward movement to its destination.

The car duly reached Dayton, Ohio, March 25th, where it met "the Dayton flood," which was so unusual and extraordinary as concededly to come within the legal definition of "an act of God." The car was surrounded by water, but on comparatively high land, and no damage occurred to the poultry. In fact, the water at this place scarcely rose above the tracks.

The general situation in Dayton, occasioned by the rise of water, was such as to call for official action on the part of the Governor of Ohio, who ordered the militia to Dayton and proclaimed martial law. Gen. Wood was placed in command.

The car of poultry was at all times in the charge of plaintiff's caretaker, whose duty it was to feed and water and look after the poultry en route. He continued his duties while the car was at Dayton, and claims that he had no difficulty in securing the necessary feed. At Dayton the caretaker employed an assistant and made arrangements to unload the poultry in a yard provided for that purpose, if the situation required it.

The car of chickens was confiscated on March 31st on the order of Gen. Wood and by his authority removed and disposed of, all against the protest of the caretaker.

Plaintiff contended that the confiscation was unwarranted and was made at the request of defendant. This contention defendant disputed.

The court submitted the case to the jury upon one theory, viz., that the defendant was liable if the car was seized by the military authorities on the

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

invitation of the carrier or any of its authorized officers and agents. All other controlling issues were resolved by the District Court in favor of the carrier.

The court presented the particular issue to the jury in the following language: "The defendant is only liable in this case for the failure of the Cincinnati, Hamilton & Dayton Railroad to discharge the duties cast upon it by law. It was its duty, of course, to transport this property, if it could do so. It couldn't overcome the flood—it couldn't overcome the action of the military authorities, if the military authorities acted of their own volition. And the only question in this case is a question of fact and a, very simple one, and it is this, whether, from all of this evidence, you believe that this property was taken and seized by the military authorities by and on invitation of the Cincinnati, Hamilton & Dayton Railroad or any of its authorized officers and agents. That is the only question you have to decide in this case."

The defendant at the close of the trial moved the court to direct the jury to render a verdict in its favor, which motion was denied. Errors complained of are: (a) Erroneous construction of the Carmack amendment to the interstate commerce law. (b) The admission and rejection of evidence. (c) Refusal to direct a verdict in favor of the defendant.

L. O. Whitnel, of East St. Louis, Ill., for plaintiff in error.
G. Gale Gilbert, of Mt. Vernon, Ill., for defendant in error.

Before MACK, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). [1] It is contended for defendant that the liability of the initial carrier for loss occurring while the shipment is in the charge of the connecting carrier is not the same as the liability of the initial carrier for loss while the shipment is in its charge and is not the common-law liability of a carrier. In support thereof, counsel refers to that portion of section 20 of the act to regulate commerce, commonly called the Carmack amendment, which reads as follows:

"Any common carrier  *  *  *  shall be liable to the lawful holder thereof for any loss, damage or injury to such property *caused by it* or by any common carrier, railroad or transportation company to which such property may be delivered or over whose lines such property may pass."

Defendant's position is that the words "caused by it" appearing in the quotation impose upon the shipper the burden of establishing that the loss was in fact caused by the carrier, and reliance is placed upon the case of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257. The United States Supreme Court, in the case of Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. Rankin, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, decided May 22, 1916, after referring to the case of Adams Express Co. v. Croninger, passing upon the words "caused by it," as they appear in section 20 of the Interstate Commerce Act, says:

"Properly understood, neither this nor any other of our opinions holds that this amendment has changed the common-law doctrine heretofore approved by us in respect to the carrier's liability for loss occurring on its own line."

The trial court properly concluded that the Carmack amendment to the twentieth section of the act to regulate commerce did not change the common-law rule or restrict the liability of the carrier. The amendment merely imposed a liability upon the initial carrier for a

loss occurring on the line of a connecting carrier. It was not intended to restrict, nor did it limit, the liability of any carrier. Atlantic Coast Line Co. v. Riverside Mills, 219 U. S. 194, 205, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; Gal. H. & S. Ry. Co. v. Wallace, 223 U. S. 492, 32 Sup. Ct. 205, 56 L. Ed. 516. Also see decisions of United States Supreme Court (Advance Sheets): New York, P. & N. Ry. Co. v. Peninsula Produce Exchange Co., 240 U. S. 34, 36 Sup. Ct. 230, 60 L. Ed. 511, decided January 24, 1916; Cincinnati, N. O. & Tex. Pac. Ry. Co. v. Rankin, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, decided May 22, 1916; N. P. Ry. Co. v. Wall, 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905, decided April 24, 1916.

[2] Defendant maintains that: (a) Invitation by the carrier to the military authorities to seize the car did not constitute "loss, damage or injury to such property caused by it or by any common carrier." (b) The seizure and confiscation of the car of chickens was by military authority over which the common carrier had no control, and that liability for loss by reason thereof was not imposed by the bill of lading or by the common law.

The first contention of defendant is based upon an erroneous construction of the Carmack amendment to the interstate commerce act as heretofore pointed out. The loss being established, the liability of the initial carrier was not dependent upon the plaintiff's proof that such loss was caused by either the initial or connecting carrier. Defendant's liability was the common-law liability of a carrier, and it was not incumbent upon plaintiff to show that an act of the carrier occasioned the loss. Galveston, H. & S. Ry. Co. v. Wallace, 223 U. S. 491, 32 Sup. Ct. 205, 56 L. Ed. 516.

[3-8] The claim of nonliability for seizure of the car of chickens, as an act over which defendant had no control, presents a more serious question.

It appears from the bill of lading that the carrier's liability was restricted by the following express language:

"No carrier nor party in possession of any of the property herein described shall be liable for any loss thereof or any damage thereto or delay caused by the act of God, the public enemy, quarantine, authority of law, or the act or default of the shipper or owner."

We find few precedents to guide us in a case like this one.

It is obvious, however, that the mere declaration of martial law would not relieve a common carrier, operating in the district thus covered, of all liability to the shipper. I. C. R. R. Co. v. McClellan, 54 Ill. 71, 5 Am. Rep. 83.

The trial court accepted the view most favorable to the defendant and concluded that martial law in its fullest sense was in fact declared, that the Governor of the state had full authority so to do, and that he exercised his power in the case, and was amply justified in exercising such power, and that Gen. Wood in charge of the military forces acted within the power delegated to him by the Governor.

Accepting this view, the district court concluded to rest the carrier's liability merely upon the action of the railroad officials lead-

ing up to the confiscation of the car of chickens. In view of this court's conclusion on this phase of the question and the law applicable thereto, it is not necessary to consider the effect, generally, upon a carrier's liability, of the declaration of martial law under the circumstances here disclosed.

While the testimony on this issue was controverted, the district court was amply justified in submitting to the jury the question of whether the property was taken and seized by the military authorities by and upon the invitation of the carrier, provided the determination of this issue imposed a liability on the carrier.

Col. Vollrath, one of Gen. Wood's aids, testified that he received a postal card from an official of the Cincinnati, Hamilton .& Dayton Railroad Company calling his attention to this car of poultry and urging that attention be given to it. A few days later he received a telephonic communication calling his attention to the car of chickens, urging him to take possession of it, and he stated such request was made either by the superintendent or assistant superintendent of the road. Assistant Adjutant General Clark testified that he received a similar telephone call from one claiming to be the freight agent of the Cincinnati, Hamilton & Dayton Railroad and that it seemed best to dispose of the contents of the car, and that "he thought it was best that the military authorities take over those chickens and distribute them."

Gen. Wood stated that if it had not been for this report, confirmed by the statement of the railroad company, he would not have ordered the carload of poultry confiscated. It further appears from the caretaker's testimony that the chickens were in good condition, and that he had sufficient food on hand or available. The superintendent of the Cincinnati, Hamilton & Dayton Railroad admitted that he went to see the caretaker and advised him that rather "than let any poultry die it would be advisable to turn them over to the authorities together with his invoice."

Notwithstanding the superintendent and assistant superintendent denied having sent the postal card and denied having held any telephonic communication with the military authorities, we conclude that, upon this state of the evidence, the court properly concluded that this issue of fact could not be taken from the jury.

Nor did the court err in concluding that these facts, if found in favor of the shipper, imposed a liability upon the carrier.

If the military authorities took the car at the request of the carrier, and would not have done so but for such request, can it be said that the loss was caused by "the act of God" or "the authority of law"? We think not. Under these circumstances, the car was not taken by the military authorities under and by virtue of the martial law declared in the city. If it were a fact that the car was taken at the request of the carrier, it was not such confiscation by military authorities as to enable the carrier to escape liability.

Even though the rainfall was so extraordinary as to constitute "an act of God," the carrier was not relieved from all liability to the shipper. It still owed the shipper the duty of exercising reasonable diligence in endeavoring to save the shipment or prevent further loss.

McNeil Higgins Co. v. Old Dominion Steamship Co., 235 Fed. 854, — C. C. A. —, decided by this court at this session.

The burden of proving that the loss resulted from some cause for which the carrier was not responsible in law or by contract is upon the defendant. Galveston, Harrisburg & San Antonio Ry. Co. v. Wallace, 223 U. S. 481, 492, 32 Sup. Ct. 205, 56 L. Ed. 516. It became therefore incumbent upon the defendant to show that the loss was due solely to some one or more of the causes which by law exempted it from liability.

If the loss be occasioned by a commingling of the "act of God" and the negligence of the carrier, the latter is not relieved from liability. Wolf v. American Express Co., 43 Mo. 421, 97 Am. Dec. 406; Wald v. Pittsburgh, C., C. & St. L. R. R., 162 Ill. 545, 44 N. E. 888, 35 L. R. A. 356, 53 Am. St. Rep. 332. For the same reason we conclude that the exception represented by the words "authority of law" as they appear in the bill of lading relieves the carrier from liability only when such cause is free from any act of the carrier contributing to the loss. 4 Ruling Case Law, § 199; B. & O. R. R. v. O'Donnell, 49 Ohio St. 489, 32 N. E. 476, 21 L. R. A. 117, 34 Am. St. Rep. 579; I. C. R. R. Co. v. McClellan, 54 Ill. 58, 5 Am. Rep. 83.

The rule seems to be well stated in 4 Ruling Case Law, § 199, as follows:

"Since a carrier is bound, both by duty and necessity, to respect and yield to the paramount public authority in power at the place where his undertaking is to be performed, it has been held that, if the process is not void on its face, he will be protected even though the statute under which the property is seized is unconstitutional. * * * Moreover, in order that the act of public authority may be a protection in such cases, it is necessary that the seizure be made without the procurement or connivance of the carrier."

The District Court therefore did not err in refusing to direct the verdict for the defendant.

[9] Defendant further complains because of the admission of incompetent and hearsay evidence and because the evidence received did not establish the authority of or the agency of the parties whose statements were so received in evidence.

The objection that the evidence was incompetent and mere hearsay is untenable for the reason that the defendant read in evidence the depositions containing the statements now complained of. The testimony of the witnesses, whose evidence is now objected to, was taken by deposition at the request of the plaintiff. On the trial these depositions were read in evidence by defendant. It follows that defendant is in no position to complain.

[10] Objection is also made because the testimony failed to show that the statements were made by any one authorized to speak for the defendant. The difficulty with this objection is that the testimony complained of was received without objection. Witnesses stated that either the superintendent or the assistant superintendent made the request of Gen. Wood that the car of chickens be confiscated. If the party who thus made the request was either the superintendent or the assistant superintendent of the division, there can be no question but that agency as well as authority was inferable.

[11] Complaint is also made because the court admitted in evidence a claim presented to the defendant by the plaintiff, and which contained a statement of the number of pounds of poultry as well as the price at which the poultry was to be sold at Newark, N. J. The evidence was properly received, not to establish price, but to show the plaintiff presented its claim to the carrier prior to the commencement of the action, and pursuant to the provisions of the bill of lading. It was not offered or received for any other purpose and value was established by other testimony.

The judgment is therefore affirmed.