SOUTHERN RY. CO. v. PETTIT et al.

(Circuit Court of Appeals, Sixth Circuit. January 15, 1919.)

No. 3188.

1. CARRIERS ⊂═25—REGULATION OF SHIPMENTS—RULES OF INTERSTATE COMMERCE COMMISSION—"BURNT COTTON."

Rule of the Interstate Commerce Commission providing that burnt cotton, which is cotton that has been on fire, and which has not been subsequently repicked and rebaled, must not be offered for shipment until it has been reconditioned, or until not less than five days have elapsed since the last evidence of fire therein, does not forbid shipment of cotton which had been part of a larger mass that had been on fire after five days elapsed, merely because there was fire in other cotton about 200 yards distant at the time of the shipment.

2. CARRIERS ⊂═136—CARRIAGE OF GOODS—EVIDENCE.

In an action against a railroad company for the value of burnt cotton, which was destroyed while in transit, the question whether the cotton was on fire at the time of the shipment, or whether it caught on fire while in transit, held one of fact for the jury.

3. CARRIERS ⊂═134—DESTRUCTION OF SHIPMENT—VALUE—EVIDENCE.

In an action for the value of burnt cotton, which was destroyed while in transit after it had been salvaged, testimony by witness of large experience in buying and selling burnt cotton as to its value, based on the market value of merchantable cotton, held competent and sufficient to support a verdict for damages, though the witness did not state the cost of reconditioning the cotton, on which his estimate of value had been based; that being matter for cross-examination.

4. APPEAL AND ERROR ⊂═1048(6)—REVIEW—HARMLESS ERROR.

In action for the value of burnt cotton, which was destroyed in transit after it had been salvaged, refusal to permit cross-examination of plaintiff as to the amount paid for the cotton, which the carrier desired to introduce on the question of value, held harmless; there being no showing of the expense of handling, salvaging, repicking the cotton, etc.

5. CARRIERS ⊂═132—CARRIAGE OF GOODS—LOSS BY FIRE—BURDEN OF PROOF.

Where a carrier accepted for shipment burnt cotton that had been salvaged, and the bill of lading acknowledged the receipt of the shipment in apparent good order and free from fire, and there was evidence that it had been free from fire five days previous, there is a presumption that the failure of the carrier to deliver the cotton which burned during transit was due to its fault, and refusal to charge that before the shipper might recover he must show some evidence of negligence on part of the carrier, was proper.

6. APPEAL AND ERROR ⊂═719(7)—REVIEW—ASSIGNMENT OF ERROR.

Where burnt cotton, which had been salvaged, was destroyed while in transit, and no inherent defect or vice was suggested, except the existence

---

⊂═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of smouldering fire, and that was fully covered by the charge, the refusal of a request that there could be no recovery if the fire originated because of inherent defect or vice of cotton will not be considered on appeal; no assignment of error having been taken, and the case not being one where the court should, under rule 11 (202 Fed. viii, 118 C. C. A. viii), review the ruling without an assignment.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Hugh Pettit and the Newberger Cotton Company against the Southern Railway Company. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

Earl King, of Memphis, Tenn., for plaintiff in error.

Julian C. Wilson, of Memphis, Tenn., for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. On May 6, 1916, defendants in error, hereinafter called plaintiffs, shipped over the line of plaintiff in error, hereinafter called the carrier, from Decatur, Ala., consigned to Memphis, Tenn., several carloads of "salvaged cotton"; that is to say, cotton which had been in a fire. During transportation, three of the carloads, aggregating 56,801 pounds, were burned up. This suit was brought for the recovery of its value. The carrier, in addition to general denial, pleaded that the loss was occasioned through plaintiff's negligence, and, by counterclaim, asked recovery for the injury to its equipment, etc., by reason of the fire, which was alleged to have been due to plaintiffs' negligence, in that the cotton was loaded into the cars while still containing fire, and without the exercise of due care, and in not ascertaining that it contained fire. There was a trial to a jury, and verdict and judgment for plaintiffs for $5,021, as the value of the cotton; the counterclaim being rejected.

[1, 2] 1. The Gulf Company's compress at Decatur, Ala., was burned April 25, 1916. Previous to the fire, there were in the compress about 9,000 bales of cotton; a portion of this was bought by plaintiffs on May 2d, which was four days before the shipment in question. A rule of the Interstate Commerce Commission provides that—

" 'Burnt cotton' is cotton that has been on fire, and which has not been subsequently repicked and rebaled. It must not be offered or accepted for shipment at an originating station until it has been reconditioned by picking and repacking in bales, or until not less than five days have elapsed since the last evidence of fire in it. It must be marked and described on shipping orders and bills of lading as 'Burnt cotton, yellow label,' and cars containing any quantity of it must be protected by the inflammable placard."

The bill of lading acknowledged receipt of a large number of both bales and bundles of "burnt cotton," with notation "Inflammable placard applied, yellow label." Its conditions, as respects interstate shipments, were made subject to the provisions of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [Comp. St. § 8563 et seq.]). The waybills for the shipments were each marked "Inflammable." One covered 13 bales and 40 bundles, another 62 bun-

dles, the third 65 bales, of "burnt cotton." There was testimony that the cars bore the "inflammable placards." At the conclusion of the testimony, defendant moved for directed verdict in its favor, upon the ground that it conclusively appeared that the plaintiff broke the Interstate Commerce rule by shipping cotton within five days since the last evidence of fire in it, that in fact there was fire smouldering in it when loaded, that plaintiff was thus guilty of negligence, and that the cotton was consumed as the result of this smouldering fire.

This motion was properly overruled. There was substantial and competent testimony tending to show that the cotton was free from fire when shipped and for more than five days before. This testimony is not subject to the criticism of being merely an expression of opinion, as distinguished from actual knowledge. The officer of the Salvage Company, which took charge of the cotton on the 25th of April, testified to his segregating bales that had been on fire, "handling them individually, and examined every one of them," piling it, inspecting it, and repiling three times for the purpose of discovering fire; that in the case of baled cotton, which appeared little affected by fire, the affected portions were pulled out, water applied with a hose, and the existence of heat further tested by the hand; these tests were applied for several days. Unpressed cotton was saturated with water, raked into winrows, reraked, resaturated, and finally packed into sacks; that while the inspection was made by men in charge of it, as well as himself, he inspected all of it personally, and saw personally that all precautions were taken; that to the best of his knowledge "the fire was absolutely out two days before it was offered for sale," which would be six days before the shipment in question. The testimony of the witness was clear and emphatic.

One of the plaintiffs testified to his personal charge and examination of all the cotton previous to shipment and its freedom from fire when shipped. The testimony of conscientious witnesses could not well go further. There was other testimony tending to the same result. There was some testimony tending to show the contrary, but the motion to direct verdict did not involve the rule of weight of affirmative as opposed to negative testimony. There was, however, an item of testimony that at the time of the shipment there was fire in some cotton situated about 200 yards from the cotton in question, and if this testimony is to be accepted as conclusive, and if the Commission's rule is to be interpreted as forbidding shipment within five days after the existence of fire in any part of an originally larger mass, plaintiffs' testimony as to the absence of fire was possibly not definite enough to cover such situation; but we cannot so interpret the rule, which merely forbids the shipment of "cotton that has been on fire * * * until not less than five days have elapsed since the last evidence of fire in it." There was affirmative evidence, on the carrier's part, tending to show that the cars were fire-tight and that the engine's equipment effectually excluded the possibility of fire from sparks; but, while this testimony was not directly contradicted, it merely raised a question of fact. It did not, in our opinion, necessarily exclude all reasonable possibility that the cotton was free

from fire when loaded, even though the other theory might seem to us the more probable.

[3] 2. It is urged that there was no evidence on which to base the verdict, in that there was no competent testimony of the value of the cotton. The contention is that the test is market value, and that the testimony of one of plaintiffs (the only witness on the subject) was merely a guess. This contention must be rejected. It appeared that the market value of merchantable cotton is based on the Memphis Cotton Exchange price of upland middling; the higher grades bringing more, the lower grades less, than middling. The witness, who had large experience in buying and selling burnt cotton, testified that, while there was no exchange price for burnt or irregular cotton, there was a market value for it; the value being based on the Memphis Exchange price for regular cotton, taking into account the cost of reconditioning, etc. He testified generally that the value of the burnt cotton, when reconditioned, would be from one-half a cent to one cent less than middling cotton (whose exchange price, from May 6 to May 23, ranged from 12½ to 13 cents), and that the cotton in question was "mostly high grade." He further said that the cotton which was not burnt in transit was, on reaching Memphis, divided into three grades: White, stained and burnt; the burnt pickings selling at 7¼ cents without being reconditioned; the stained cotton, for the most part, at 10½ to 11 cents as fast as conditioned; the baled cotton was said to be worth 1½ or 2 cents more than the loose or sacked cotton. After saying that "this very cotton" would be worth 12 to 12¼ cents after it had been reconditioned, in answer to a question what it was worth "as a whole" on May 10th or 11th, at the time it "ought to have arrived," he answered, "About 10½ or 11 cents a pound" (the recovery was at about 9 cents a pound). We think it fairly open to inference that the cotton consumed in transit was intended to be covered by that answer, notwithstanding the interpolated query of the witness, "As it was when it arrived here?" The cost of reconditioning was not stated, nor the relative proportions of the three grades; but these were matters open to cross-examination, and their omission affected only the weight of the testimony of value at Memphis. The average value given by the witness was apparently intended to be based upon the market price, as shown by the quotations at the time the cotton should have reached Memphis, less the cost of reconditioning and making it marketable. This we think proper, in view of the experience of the witness.

[4] Complaint is also made that defendant was not permitted to show by cross-examination what plaintiffs paid for the burnt cotton at Decatur. Assuming, for the purposes only of this opinion, that its admission would not have been error, we think there was no reversible error in rejecting it. The testimony of amount paid (it was not bought by the pound) would be of no substantial value, in the absence of complete showing of the expense of handling, salvaging, and repicking at Decatur, the proportion of the cotton wholly lost in that operation, the cost of the transportation to Memphis, and the expenses of reconditioning and reselling.

[5] 3. Error is assigned upon the refusal to charge that, "before the plaintiff in the original suit can recover, he must show some evidence of negligence upon the part of the railroad company," and upon the instruction that the burden was on defendant to show (in order to relieve itself from liability for loss of the cotton) that plaintiff delivered, for shipment, the cotton afterwards burned within five days after the last evidence of fire in the bulk of the cotton.

The carrier would not be liable for fire caused by plaintiffs' fault. Not only did the bill of lading acknowledge the receipt of the shipment "in apparent good order, * * * which said company agrees to carry to its usual place of delivery at said destination," but plaintiffs had given affirmative oral testimony tending to show, not only that the cotton was in good shipping condition when received by the carrier, and free from fire, but that it had been so free for more than five days before. The nondelivery by the carrier raised the presumption that the cotton had been lost through its negligence, and the burden was thus cast on it to show that the fire, and consequent failure to deliver the cotton, was due, not to its fault, but to plaintiffs' fault: Galveston, etc., Ry. Co. v. Wallace, 223 U. S. 481, 492, 32 Sup. Ct. 205, 56 L. Ed. 516; Chicago, etc., Ry. Co. v. Collins Co. (C. C. A. 7) 235 Fed. 857, 863, 149 C. C. A. 169.

[6] 4. Defendant complains of the failure to charge that, "if the fire originated by virtue of the inherent defect or vice of the cotton shipped," the defendant must have verdict. No error was assigned on the failure to give this request; and, under our rule 11 (202 Fed. viii, 118 C. C. A. viii), we are not called upon to consider it. We see no occasion to exercise discretion in its favor. No "inherent defect or vice" is suggested, except the existence of smouldering fire; and that subject was fully covered by the court's charge. Indeed, that defendant's counsel so understood is indicated by its assignment of error in the charge "that the burden of proving that the fire in question was occasioned by the inherent vice of the property was upon the defendant."

Finding no reversible error in the record, the judgment of the District Court is affirmed.